PMC/TMS: USAO 2021R00647

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No.** ___1:22-mj-02965-JMC___ |
| **JASON LEIDEL, and** <br> **SARAH ELIZABETH SORG,** | |
| **Defendants.** | |
| **IN THE MATTER OF THE SEARCHES OF:** <br> **(1) THE PREMISES LOCATED AT 2893 SCHOOLHOUSE CIRCLE, SILVER SPRING, MD 20902 ("TARGET PREMISES");** <br> **(2) THE PERSON OF JASON LEIDEL; and** <br> **(3) THE PERSON OF SARAH ELIZABETH SORG** | **Case No.** ___1:22-mj-02966-JMC___ <br><br> **Case No.** ___1:22-mj-02967-JMC___ <br><br> **Case No.** ___1:22-mj-02968-JMC___ <br><br> **FILED UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT
## AND APPLICATIONS FOR SEARCH WARRANTS

I, Kevin Kuo, a Special Agent with the Federal Bureau of Investigation

("FBI"),[1] being duly sworn, state the following:

### INTRODUCTION AND AGENT BACKGROUND

1. This affidavit is submitted in support of a criminal complaint and arrest

warrant, as well as applications pursuant to Rule 41 of the Federal Rules of Criminal

Procedure for warrants authorizing the search of the following locations:

---

[1] Because of the length of this affidavit and the number of acronyms, a reference list of acronyms is provided at Attachment C.

a.      The premises known as 2893 Schoolhouse Circle, Silver Spring, MD 20902 (the ("**TARGET PREMISES**"), further described in **Attachment A-1** hereto, for the things described in **Attachment B-1**, and

b.      The person of **JASON LEIDEL,** born in ▆▆▆▆ 1980, further described in **Attachment A-2** and residing at the TARGET PREMISES, for:

i.      Electronic evidence, as further described at **Attachment B-1**; and

ii.      Buccal or oral swabs in sufficient quantity for scientific testing as it relates to deoxyribonucleic acid ("DNA"), as further described **at Attachment B-2.a**,

c.      The person of **SARAH ELIZABETH SORG,** born in 1979, further described in **Attachment A-3** and residing at the TARGET PREMISES, for:

i.      Electronic evidence, as further described at **Attachment B-1**; and

ii.      Buccal or oral swabs in sufficient quantity for scientific testing as it relates to deoxyribonucleic acid ("DNA"), as further described **at Attachment B-2.b**.

2.      I submit, pursuant to the facts set forth in this Affidavit, that there is probable cause to believe that **JASON LEIDEL** and **SARAH SORG** have committed the following violations of federal law:

a.      18 U.S.C. § 371 (Conspiracy to Commit Cyberstalking);

b.      18 U.S.C. § 1028A(a)(1) (Aggravated Identity Theft);

c.      18 U.S.C. § 1030(a)(2)(C) (Fraud in Relation to Protected Computer); and

d.      18 U.S.C. § 2261A(2)(B) (Cyberstalking)

and that evidence, fruits, and/or instrumentalities of these offenses will be found in the TARGET LOCATION and on their persons.

3.     I am a Special Agent with the FBI and have been since June 2016. I have been assigned to the FBI Baltimore Cyber Task Force in Baltimore, Maryland.  During my employment as an FBI Agent, I have been assigned to investigate violations of federal law, including those concerning fraud and related activity in connection with computers.  I have participated in the execution of federal search warrants on physical properties, vehicles, and digital media and have seized and transported digital evidence, in accordance with FBI procedures.

4.     I have received training and have gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, and the execution of searches and seizures. I have also received training on computer evidence identification, computer forensics, electronic device evidence seizure and processing, and various other criminal laws and procedures.

5.     The facts set forth in this affidavit are based upon my personal knowledge and knowledge obtained during my participation in this investigation, including my review of documents related to this investigation, communication with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience.  This affidavit does not contain all of the information known to me regarding this investigation.  I have included in this affidavit facts that I believe are sufficient to support a probable cause finding for the issuance of the requested criminal complaint, arrest warrant, and search warrants, but I do not purport

to include each and every matter of fact observed or known to me or other law enforcement agents involved in this investigation.

## PROBABLE CAUSE

6.      The FBI and investigators from the Naval Criminal Investigative Service ("NCIS"), United States Department of Transportation Office of the Inspector General ("USDOT OIG"), Montgomery County Police Department ("MCPD"), and the Virginia Beach Police Department ("VBPD") are collectively investigating **JASON MICHAEL LEIDEL** (hereinafter "**JASON LEIDEL**" or "**SUBJECT 1**"), an active-duty commissioned officer of the United States Navy ("USN"), and **SARAH ELIZABETH SORG** (hereinafter "**SARAH SORG**" or "**SUBJECT 2**"), a Senior Trial Attorney for the United States Department of Transportation ("DOT") for violations of 18 U.S.C. §§ 1028A(a)(1) (Aggravated Identity Theft), 1030(a)(2)(C) (Fraud in Relation to Protected Computer), 2261A(2)(B) (Cyberstalking), and 371 (Conspiracy to Commit Cyberstalking).

7.      The information and conclusions herein derive from the investigation of federal law enforcement authorities, including the FBI, NCIS, and USDOT OIG, along with partner agencies the VBPD, and MCPD.  Various **USER ACCOUNTS** have already been reviewed during this investigation, typically as a result of warrants or consensual examination.

8.      On August 4, 2020, MCPD and VBPD executed a residential search warrant of **JASON LEIDEL** and **SARAH SORG**'s residence.[2]  The search warrant

---

[2] **JASON LEIDEL** and **SARAH SORG** were cohabitating at the time this residential search warrant was executed.

yielded several devices, to include laptops, desktops, storage media and cellular telephones, which were seized from the residence. Several of these devices were transferred over to the FBI for examination and analysis.  Furthermore, the Department of Defense ("DOD") and United States Department of Transportation ("DOT") provided the full content of government user accounts and government devices assigned to **JASON LEIDEL** and **SARAH SORG**, a Senior Trial Attorney for DOT.

9.      I believe that **JASON LEIDEL** has engaged in a long-term and extensive scheme to harass his ex-wife, E██ L██ (hereinafter "E██ L██" or "VICTIM 1"), interfere with court proceedings relating to domestic relations issues, and perpetrate fraud on courts in both Montgomery County, MD and Virginia Beach, VA.  Among other things, **JASON LEIDEL** used spoofed[3] and fraudulent email accounts and phone numbers to falsely create communications purporting to come from E██ L██, thus causing criminal charges to be filed against her, disrupt her employment and interfere with her personal life.  **JASON LEIDEL** also sent emails from compromised accounts and spoofed accounts in order to portray E██ L██ as a mentally unstable parent, with the hope that he would gain custody of their minor children in order to deprive E██ L██ of his retirement accounts and pension in their divorce agreement.  E██ L██ has cooperated with all law enforcement agencies involved, waived any attorney-client privilege in order to corroborate the allegations against **JASON LEIDEL**, and consented to the examination of her online accounts as well as her complete medical history.  E██ L██ has denied sending threatening and harassing communications that **JASON**

---

[3] Spoofing refers to the technique of using computer software to send an email that appears to be sent from another account, or to send a text message that appears to be sent from another phone number.

**LEIDEL** attributes to her.  I believe that **SARAH SORG** has conspired with and aided and abetted **JASON LEIDEL** in the commission of these offenses.

10.     In committing these offenses, **JASON LEIDEL** has either directly or indirectly involved and/or implicated other individuals in this matter, in addition to E█████ L████, including the following:

    a.      VICTIM 2 – M████ S████

    b.      VICTIM 3 - T██ Y███

    c.      VICTIM 4 – M███ Y███

    d.      VICTIM 5 – E███ H███

    e.      MINOR 1 – EVxxxx Lxxxxx

    f.      MINOR 2 – ELxxxxx Lxxxxx

    g.      **SARAH SORG – SARAH SORG**

    h.      INDIVIDUAL C – W████ C███ ("C████")

    i.      WITNESS 1 – Principal R████ Y████

    j.      WITNESS 2 – Col. R████ P███

    k.      WITNESS 3 – S████ H████

    l.      PHYSICIAN 1 – Dr. G███ P████

    m.      PHYSICIAN 2 – Dr. R███ S████ C████

    n.      PHYSICIAN 3 – Dr. M████ N███

**MARRIAGE AND MILITARY/ACADEMIC HISTORY**

11.     **JASON LEIDEL** and E███ L███ became romantically involved in or about August 2004, when they both lived in the vicinity of Washington, D.C. They were

married in September 2005.  During their marriage, **JASON LEIDEL** and E▮▮▮ L▮▮▮ had two children, MINOR 1 and MINOR 2.

12.    **JASON LEIDEL** served on active duty in the United States Air Force ("USAF") from approximately March 18, 2003 to August 2, 2009.  He was assigned to 88th Med Operations Squadron, Wright-Patterson Air Force Base, OH.  **JASON LEIDEL** attended the University of Kentucky's ("U of K") College of Dentistry from 2009 to 2011 under a USN scholarship.

13.    On May 21, 2011, **JASON LEIDEL** was placed on Academic Suspension for submitting a false document during an Honor Code Hearing. This was his second academic integrity violation at the U of K.  **JASON LEIDEL**'s Academic Suspension was effective until 2013.  **JASON LEIDEL** withdrew from the program on January 31, 2012.  However, on **JASON LEIDEL**'s "Electronic Questionnaires for Investigations Processing", also known as an "SF-86" form for a Department of Defense security clearance, which was submitted by **JASON LEIDEL** on February 5, 2015, **JASON LEIDEL** answered "No" to the following group of questions referencing his time at the U of K.: "For this employment have any of the following happened to you in the last seven (7) years? Fired. Quit after being told you would be fired. Left by mutual agreement following charges or allegations of misconduct.  Left by mutual agreement following notice of unsatisfactory performance."

14.    In 2015, while serving on active duty in the USN, **JASON LEIDEL** applied for admission to a Ph.D. program at the Uniformed Services University for the Health Sciences ("USUHS"), Bethesda, MD.  As part of his admissions packet, **JASON LEIDEL** included a copy of his unofficial U of K transcript. The transcript he submitted

had a printed on date of January 12, 2012.  This unofficial copy of **JASON LEIDEL**'s

transcript did not reflect his withdrawal from the academic program on January 31, 2012.

An updated, unofficial transcript with a print date of April 23, 2019 stated "Student

Withdrew 1/31/12" at the bottom.  **JASON LEIDEL** was not accepted to the USUHS on

this first attempt.

      15.    In 2017, **JASON LEIDEL** reapplied to the same Ph.D. program at

USUHS.  However, **JASON LEIDEL** did not include an updated unofficial U of K

transcript with this application submission.  As noted above, an updated unofficial

transcript would have indicated his withdrawal from the U of K.  **JASON LEIDEL** was

accepted into the Ph.D. program at the USUHS and reported for this assignment in June

2018.  The admissions staff of USUHS later advised investigators that they "can't

imagine any circumstance in which [they] would admit a candidate if [they] knew about

[a] prior dismissal/withdrawal due to academic integrity issues."

      16.    During his time at USUHS, **JASON LEIDEL** was placed under review by

the institution for plagiarism.  **JASON LEIDEL** was given a remediation plan by

USUHS, but the institution determined that **JASON LEIDEL** did not successfully

complete the requirements of the remediation plan.  As such, USUHS commenced the

process to remove **JASON LEIDEL** from the program.  In December 2020, before being

removed for cause, **JASON LEIDEL** withdrew as a graduate student of USUHS.

## HARASSMENT AFTER SEPARATION USING
## FRAUDULENT AND COMPROMISED EMAIL ACCOUNTS

      17.    In or about June 2018, **JASON LEIDEL** and E███ L███ became

estranged.  E███ L███ temporarily left the family residence in Montgomery County,

Maryland and stayed at her parents' residence in ███████████.  In or about July 2018,

E███ L███ returned to Montgomery County, Maryland to collect her belongings having decided to permanently separate from **JASON LEIDEL** on approximately August 1, 2018. E███ L███, along with MINOR 1 and MINOR 2, returned to Virginia Beach, VA, where they had lived prior to **JASON LEIDEL's** USUHS assignment, while **JASON LEIDEL** remained in Montgomery County, MD. E███ L███ was a ██████ ██████ teacher and is currently employed by the ██████████.

      18.    Through the course of the investigation and from information provided by VBPD, MCPD, and NCIS, as well as my knowledge, training, and experience, I believe that, within a few days of E███ L███ temporarily leaving the family residence in Montgomery County, MD in June 2018, **JASON LEIDEL** started a scheme and a campaign to harass E███ L███ by: (1) compromising several of her personal online accounts; sending emails purportedly on E███ L███'s behalf in order to sabotage her employment; (2) generating fraudulent government records to include medical records to be used against E███ L███ in court; (3) filing false reports with various police departments and state/municipal agencies; (4) spoofing email addresses; and (5) filing court motions based on knowingly false information and statements, the latter of which ultimately resulted in E███ L███ being arrested and incarcerated for four days before charges against her were dismissed by state authorities.

      19.    Based on the investigation, I believe **JASON LEIDEL** was the subscriber to the account johnnyonthespot2017[@]gmail.com ("**USER ACCOUNT AH**") and compromised E███ L███'s email account, risingridge██████.com ("**USER ACCOUNT DC**"). **JASON LEIDEL** created purported communications between T█ Y██, an individual **JASON LEIDEL** alleged to have an affair with E███ L███ and

alleged account owner of **USER ACCOUNT AH**. The purported communications authored by **JASON LEIDEL** make it appear as if E████ L████ was attempting to conceal an alleged affair with T█ Y████ from **JASON LEIDEL**.

20.     On June 14, 2018, johnnyonthespot2017[@]gmail.com ("**USER ACCOUNT AH**") began correspondence with risingridge█████████.com ("**USER ACCOUNT DC**") with an email with the subject, "Test." Subsequent emails between both accounts continued through October 2018 and contained purported correspondence between T█ Y████ and E████ L████ regarding their alleged affair.

21.     On October 2, 2018, johnnyonthespot2017[@]gmail.com ("**USER ACCOUNT AH**") received an email from Yahoo Customer Care in regards to a compromised account. In this email from Yahoo Customer Care, Yahoo addressed the account owner of johnnyonthespot2017[@]gmail.com ("**USER ACCOUNT AH**") as "Jason" despite the account purportedly belonging to T█ Y████:

> Subject: Hacked accounts : Don't have access to alternate email (Case: 28548210) [ref:1N00000glhIvQAI:ref]
> From: Yahoo Customer Care <customercare@cc.yahoo-inc.com>
> Date: 10/2/2018, 8:42 AM
> To: "johnnyonthespot2017@gmail.com" johnnyonthespot2017@gmail.com
>
> Hello Jason,
>
> Thank you for contacting Yahoo Customer Care.
>
> I understand your concern that you are unable to sign in to your account. Please be assured, I will try my best to assist you in this matter.
>
> To help us confirm that it's really you, please provide the answers to the verification information currently listed on the account by clicking the URL below:
>
> https://io.help.yahoo.com/contact/avqa?page=avqa&locale=en_US&avqatoken=F HTcThoouzwtq12Hgu99psbXIVT6ysTL

<https://io.help.yahoo.com/contact/avqa?page=avqa&locale=en_US&avqatoken=
FHTcThoouzwtq12Hgu99psbXIVT6ysTL>

It's important that we get all these answers. Without them, we'll be unable to help
you out.

One of the ways we protect your account is by denying assistance to those who
can't verify their account information.

We'll cross-check your answers with what we have on record.

I'm looking forward to your reply.

Regards,
Shreya
Yahoo Customer Care

22.     On August 13, 2018, **JASON LEIDEL**'s official DOD user email

account, jason.leidel[@]usuhs.edu ("**USER ACCOUNT AO**"), contained

correspondence between johnnyonthespot2017[@]gmail.com ("**USER ACCOUNT**

**AH**") and risingridge█████████.com ("**USER ACCOUNT DC**") with the email

subject "Make It Gone."  The email stated and contained the following screenshots which

could have been accessed only by someone with the ability to log into E██ L██'s

account after its credentials had been changed:

> From: JohnnyOnTheSpot <johnnyonthespot2017@gmail.com>
> Date: Monday, August 13, 2018
> Subject: Make It Gone
> To: Rising Fox <RisingRidge██████.com>
>
> Just in case you are logging into a computer he may have access to, you want to
> make sure he doesn't have access to what your e-mail address is.  If you are
> reading this, and you just logged into a computer he has access to...the follow the
> pictures below right after you log out, to remove this account from his
> computer.  You will also want to go into the settings / browser history and clear
> the browser history and cache...so he doesn't try to see what e-mail accounts you
> have logged into.
>
> Also, to prevent having to erase the browser history afterwards, you can always
> just log into the Google Chrome browser...and before you go anywhere, click on

the "three vertical dots" in the top-right, then go to "*settings*", then "*Manage other people*", then finally "*Browse as Guest*"  This will prevent anything you go to from being saved to the computer history.

I hope this helps to keep you safe.



1st



2nd



3rd



4th

23.     Based on records provided by Apple, Yahoo Inc., and Meta Platforms (Facebook) indicate that **JASON LEIDEL**'s online accounts with Apple, Yahoo Inc., and Meta Platforms use the email address leidel[@]aol.com ("**USER ACCOUNT AA**") as a unique identifier.  Furthermore, all of **JASON LEIDEL**'s accounts with Apple, Yahoo Inc., and Meta Platforms have been verified[4] with **JASON LEIDEL**'s cell phone number ██████-2915.

24.     A review of jason.leidel[@]usuhs.edu ("**USER ACCOUNT AO**"), **JASON LEIDEL**'s official Department of Defense ("DOD") user email account at USUHS, showed that, on August 14, 2018, this account received an email from leidel[@]aol.com ("**USER ACCOUNT AA**"), **JASON LEIDEL**'s personal email, containing account login credentials for B██ L████'s email account risingridge██████.com ("**USER ACCOUNT DC**"), with the subject "Fwd: Yo" stating:

> Sent from my iPhone
>
> Begin forwarded message:
> From: leidel[@]aol.com  **[USER ACCOUNT AA]**
> Date: August 11, 2018 at 8:58:03 PM EDT
> To: leidel[@]aol.com  **[USER ACCOUNT AA]**
> Subject: Yo
> Apple ID:  risingridge██████com **[USER ACCOUNT DC]**
> [*password redacted*]
>
> Nfcu
> [*password redacted*]

---

[4] When provider records indicate that a phone number is "verified," that means the provider in some way authenticated that phone number as being associated with the individual accessing the account.  For instance, most providers will send a text message code to the phone number.  The individual with access to that code will then enter the code when logged into the account.  Once complete, the provider will have "verified" the phone number with that account.

Sent from my iPhone

25.     This email shows that **JASON LEIDEL** had knowledge of E█ L███'s

login credentials such as username and password for risingridge█████████.com

("**USER ACCOUNT DC**").  Further, a forensic review of an **JASON LEIDEL**'s iPhone

6S that was seized on August 4, 2020, revealed that the iPhone 6S was used to

authenticate **USER ACCOUNT DC** with Google after August 1, 2018, as well as

s█████teacher[@█████].com ("**USER ACCOUNT DE**").  **USER ACCOUNT DE**

was another compromised email account for E█ L███'s Apple account.  Additionally,

E█ L███ indicated that her Microsoft email account e██.l███[@]█.com

("**USER ACCOUNT DF**") was also compromised.

26.     Records provided by Yahoo Inc., showed that

hooknmermaid[@]yahoo.com ("**USER ACCOUNT AE**") was created on August 13,

2018, which was less than two weeks after **JASON LEIDEL** and E█ L███

permanently separated and one day before sending fraudulent communications to E█

L███'s former supervisor, R███ Y███, principal of █████ Elementary School in

Virginia Beach, VA, as will be described further herein.  The verified recovery phone

number █████-2915 for **USER ACCOUNT AE** matched **JASON LEIDEL**'s primary

cell phone number.

27.     In August 2018, E█ L███ started to search for employment in Virginia

Beach, VA.  E█ L███ contacted R███ Y███, principal of █████ Elementary

School in Virginia Beach, VA, to see if there were any openings.  Between August 14,

2018, and August 29, 2018, R███ Y███ began receiving emails from

hooknmermaid[@]yahoo.com ("**USER ACCOUNT AE**").  The emails alleged that

███ Elementary School employed E██ L███ and described E██ L██ as

follows:

> From: hook memajd <hooknmermaid[@]yahoo.com>
> To: R███.Y████ [@]VBSchools.com <R███.Y██ [@]VBSchools.com>
> Sent: Tuesday, August 14, 2018, 12:00:59 AM EDT
> Subject: Moral compass of your new teacher
>
> Principal,
>
> Does virginia beach public schools have a moral compass' personal ethics
> requirement? One of your teachers has been carrying on an extra-marietal affair
> with another man. This other man is in the military. Probably not the best vantage
> for your schools demographics. Just saying. I have sexually explicit emails plus
> phone records that corroborate that the to authors of these emails our who i claim.
> The woman happens to work for you.
>
> The other man's army chain of command our currently reviewing these same
> emails and have considered filing charges to remove the man from the army.
>
> If you or the district want this information, let me no, & i'll send you what I have.
>
> Call sign
>
> Hook N Mermaid

28.     On August 20, 2018, an email from hooknmermaid[@]yahoo.com

("**USER ACCOUNT AE**") commended Virginia Beach Public Schools ("VBPS") for

withdrawing its offer of employment to E██ L███ and stated**:**

> On Monday, August 20, 2018, 5:20:26 AM EDT, hook memajd
> <hooknmermaid@yahoo.com> wrote:
>
>
> I heard that va beach schools stepped up and withdrew its offer of employment for
> this unethical teacher. Yall are slowing regaining my confidence in your system.

29.     A forensic review of **JASON LEIDEL**'s Dell computer seized on August

4, 2020, identified successful authentications of hooknmermaid[@]yahoo.com ("**USER**

**ACCOUNT AE**") with Yahoo Inc. after **JASON LEIDEL** and E██ L███'s permanent

separation on August 1, 2018, which I submit indicates that **JASON LEIDEL** was the

account owner of hooknmermaid[@]yahoo.com ("**USER ACCOUNT AE**") and created

**USER ACCOUNT AE** for the purpose of cyberstalking B█████ L████.

      30.    Furthermore, a digital extraction and forensic analysis of an iPhone 6S

seized from the residence of **JASON LEIDEL** and **SARAH SORG** during the August 4,

2020 search warrant revealed that **JASON LEIDEL** was in possession of and owned at

least one electronic device containing a user name of the "hooknmermaid" variation.  In

fact, the aforementioned iPhone 6S was associated to a virtual text messaging service,

TextMe, by the username "hooknmermaid0380" as early as December 2019.

      31.    On August 21, 2018, **JASON LEIDEL** wrote an email from

leidel[@]aol.com ("**USER ACCOUNT AA**") to jason.leidel[@]usuhs.edu ("**USER**

**ACCOUNT AO**") with the subject, "Burner phone," stating:

> Mrs. L████, I tried to call you numerous times from my office ████████-1133)
> over the past few days.  It said you were unavailable.  We have received and
> reviewed several documents from the va pilot as well as a very upset young lady
> about your alleged marital indiscretions.   After reviewing this overwhelming
> evidence, Virginia Beach public schools, specifically Principal Y████ have
> rescinded its offer of employment for violations of our personal code of conduct.
> Be advised that we have referred your file to Richmond for additional review and
> potential sanctions.  Official email notification to be sent.  Please expect to be
> contacted by the Virginia Department of Education in about the next 14 business
> days.
>
> We thank you for your interest in Virginia Beach public schools.  However, our
> personal code of conduct is extremely important to us. Good luck with your future
> endeavors.
>
> Warmest regards
>
> Virginia Beach public schools.
> Sent from my iPhone

**JASON LEIDEL** was not employed by VBPS and would not have had access to information related to VBPS hiring decisions. I believe that **JASON LEIDEL** was drafting a letter from both his personal and government email accounts to rescind an offer of employment to E█ L█ on behalf of VBPS.

32.     On or about February 9, 2019, an email was sent to the Oceanfront[5] Elementary Schools Principals which included R█ Y█. The email was sent from e█ h█.com ("**USER ACCOUNT AG**"). The contents of the email included allegations against E█ L█ to the VBPS. The email stated that E█ L█ had an affair, became pregnant, aborted the child, abused prescription drugs, as well as neglected children. The email also included a link to a dating profile purported to be E█ L█ with language that supported these claims. The email from e█ h█.com ("**USER ACCOUNT AG**") also included several attachments. These attachments were purported to be conversations to support the allegations made against E█ L█.

33.     Records from Yahoo, Inc. obtained by VBPD for m█.y█.com ("**USER ACCOUNT AF**") showed that **USER ACCOUNT AF** was associated with phone number █-2915 which was **JASON LEIDEL**'s cell phone number.  I believe that **JASON LEIDEL** utilized **USER ACCOUNT AF** to communicate with colleagues of E█ L█.

34.     One of the attachments referenced in paragraph 32 above was an October 7, 2018, email forwarded to e█ h█l.com ("**USER ACCOUNT AG**")

---

[5] Oceanfront Elementary Schools does not exist.  The writer is believed to have been referring to Virginia Beach Elementary Schools.

from m███.y███████o.com ("**USER ACCOUNT AF**"), an account purportedly

belonging to M███ Y███. The email contained an email conversation that **USER**

**ACCOUNT AF** purported to have with E███ L███. The email seemed to be a

confession of an affair between E███ L███ and T██ Y███ M██ Y███'s spouse.

The email made several inferences to suicidal tendencies. E███ L███ was supposed to

have "taken a fist full of anti-depressents" and "washed them down with a few

margaritas." It continued with "If I don't wake up tomorrow, I need you to know the

truth." The email then goes on to state that the "affair was never supposed to get

physical" and that the "more time we spent on the phone and texting, the deeper in lust,

and then love I fell." It continued by stating "I'm now getting sleepy" and "If I wake up

tomorrow and we ever meet again, one day please forgive me." The email seemed to be

signed by E███ L███ and ended with "Formerly Hook's Mermaid" which ties into

hooknmermaid[@]yahoo.com ("**USER ACCOUNT AE**").

35.     The attachment sent to the Oceanfront[6] Elementary Principals also

included a second email that was sent on October 1, 2018. This email was purportedly

sent from an account associated with E██ L███. The email was sent to

johnnyonthespot2017[@]gmail.com ("**USER ACCOUNT AH**"). The owner of **USER**

**ACCOUNT AH** was purportedly T██ Y███, the spouse of M███ Y███, the individual

in the emails with whom E██ L███ was allegedly having an affair. The email started

by referring to the purported owner of **USER ACCOUNT AH** by name and followed

with "formerly known as HOOK," which bears resemblance to the email address

---

[6] Oceanfront Elementary Schools does not exist. The writer is believed to have been
referring to Virginia Beach Elementary Schools.

hooknmermaid[@]yahoo.com ("**USER ACCOUNT AE**"). The email references how

E███ L███ had to "sit at planned parenthood alone with crack heads, fat loud nigg€rs

and low life's to get an abortion." The email stated that "By the way it was a girl! You

had a daughter that you forced me to kill! She was killed surrounded by high society!

Thrown out with the trash like the crack whores and the rest of the blacks, NO, the

nigg€rs that were by my side. I was so upset that I even let one of those people, hold my

hand while your daughter was vacuumed from me." The email also stated "Do you know

what I call my students? I called my ███████ students retards."

36.     VBPD interviewed T██ Y███, M███ Y███, and E██ H███.  The

individuals denied creating, accessing, and sending emails from

hooknmermaid[@]yahoo.com ("**USER ACCOUNT AE**"), m███.y███[@███].com

("**USER ACCOUNT AF**"), e██h██████████.com ("**USER ACCOUNT AG**"),

and johnnyonthespot2017[@]gmail.com ("**USER ACCOUNT AH**").  I believe that

**JASON LEIDEL** used these email accounts to facilitate his surveillance and harassment

of E██ L███, and associates of E██ L███ to include the T██ Y███, M███ Y███,

and E██ H███.

37.     Records from Yahoo, Inc. obtained by VBPD showed that

jmichael237[@]yahoo.com ("**USER ACCOUNT AD**") is associated to phone number

███████-2915 which is **JASON LEIDEL**'s cell phone number.  Furthermore, records

from Twitter revealed that Twitter account user name Michael60082444 was created on

January 14, 2019 with **USER ACCOUNT AD** and user name "Michael jones."  Based

on the similarity of the signature block name for **USER ACCOUNT AD**, "Michael Z.

Jones" to the signature block for the email address michaeljonrs[@]mail.com ("**USER**

**ACCOUNT AN**") which will be discussed further herein, repeated communications to R████ Y████, and subscriber information such as the email address for Twitter account "Michael60082444", I believe that **JASON LEIDEL** was the user of email address jmichael237[@]yahoo.com ("**USER ACCOUNT AD**").

38.     On January 14, 2020, R████ Y████, principal of ██████ Elementary School,  received an email from jmichael237[@]yahoo.com ("**USER ACCOUNT AD**") stating:

> Principal Y████,
> I demand a full investigation into the yahoo posts about your racist and homophobic teacher.  Then calling her students my little [retards]?  Where are you guys going to draw the line?
> Michael Z. Jones

39.     I believe that shortly after E████ L████ left the shared residence, **JASON LEIDEL** started to engage in a campaign to disrupt E████ L████'s employment, interfere with her personal and professional life, and harass her and cause her distress, including in an attempt to extort concessions from E████ L████ relating to her interest in **JASON LEIDEL**'s retirement/annuity.  The investigation revealed that **JASON LEIDEL** had knowledge of E████ L████'s employment status (before that information was made public or disclosed to him).  **JASON LEIDEL** also utilized E████ L████'s user account credentials and passwords to gain unauthorized access her various personal email accounts such as risingridge██████.com ("**USER ACCOUNT DC**") and s████teacher[@██████.com ("**USER ACCOUNT DE**") as evidenced by registered user accounts to **JASON LEIDEL**'s iPhone 6S seized by MCPD pursuant to a search warrant and analyzed by the FBI.

## VIOLATION OF VIRGINIA BEACH COURT ORDERS

40.    In or about January 2019, Virginia Beach Juvenile and Domestic Relations Court ("JDRC") ordered **JASON LEIDEL** and E█ L█ to communicate with each other via the JDRC approved mobile messaging application Our Family Wizard for the purposes of parental discussions about MINOR 1 and MINOR 2.  In or about May 2019, **JASON LEIDEL** accused E█ L█ via Our Family Wizard message of leaving him for T█ Y█:

> How dare you! I reached out to you in sincerity and you lie to me, again? what you sent me didn't sound right, so I did a deeper dive. You tried to sneak in taking days away from me? I would joke that we were in a give/take relationship, where I would give and you would take.
> Although we are still married and not legally separated, your version of give/take has been over since you left me for [T█ Y█]. That was the "duress" you were talking about right? Being in love with a married man that was not your husband? Don't answer me now, you may have to eventually. I ask again, please file for divorce here in Maryland, so we can be divorced by the end of the summer.

41.    On February 22, 2019, after finding a preponderance of evidence of **JASON LEIDEL**'s cyberstalking and harassment of E█ L█, the JDRC imposed a peace bond[7] that required **JASON LEIDEL** to sign and post a $7500 peace bond with an expiration of February 22, 2021.  **JASON LEIDEL** was instructed by the Judge to not have "harassing contact… will not access any of [E█ L█]'s accounts, social medial,

---

[7] I have spoken with an Assistant United States Attorney who advised your Affiant that the peace bond described in paragraph 41 falls within the definition of 18 U.S.C. § 2266(5)(A), which reads in relevant part:

**(5) Protection order.**--The term "protection order" includes—

**(A)** any injunction, restraining order, or any other order issued by a civil or criminal court for the purpose of preventing violent or threatening acts or harassment against, sexual violence, or contact or communication with or physical proximity to, another person, including any temporary or final order issued by a civil or criminal court whether obtained by filing an independent action or as a pendente lite order in another proceeding so long as any civil or criminal order was issued in response to a complaint, petition, or motion filed by or on behalf of a person seeking protection;

email and apple accounts."  Based on the investigation, your Affiant will demonstrate

**JASON LEIDEL's** disregard for court orders and protective orders as well as criminal

activity in violation of not only existing state and federal laws, but also in violation of

explicit court orders.

## HARASSMENT OF M███████ S███████

42.      Based on the investigation and information provided by VBPD, MCPD,

and NCIS, as well as my knowledge, training, and experience, **JASON LEIDEL**

continued to expand his scheme and campaign against E███ L███ by as late as April

2019 by targeting other close associates of E███ L███, including M███ S███ after

meeting him in person on or about January 20, 2019 (E███ L███l's current husband, and

a United States Marine Corps ("USMC") officer who retired in 2021 after 21 years of

active duty service).

43.      On or about April 7, 2019, Colonel R███ P███, Detachment

Commander, USMC Dam Neck, received an email to his DOD email account from

michaeljonrs[@]mail.com ("**USER ACCOUNT AN**"):

> From: michaeljonrs@mail.com [mailto:michaeljonrs@mail.com]
> Sent: Sunday, April 7, 2019 9:28 PM
> To: ███ Col ███████ <rxxxxxxxx.pxxx@usmc.mil>
> Subject: [Non-DoD Source] Lt S███, joint target school damn neck va
> J7
>
> Good day Colonel P██ ,
>
> I wanted you to receive this email before your day became to busy.
> Lt M███ S███ of the joint targeting school at Damn neck, Virginia
> beach is married and is having an affair with another married person not
> his wife.  This sexual affair has been on going since October and yet Air
> Force director refuses to hold him accountable because?  S███ seems
> to believe that he is to valuable and  important  & basically runs the
> organization. 'I really run the show, blah blah'. That's why I'm in all the
> pictures, blah blah.'

If he were private S███████, what you do? Hold him accountable? Most certainly. Because he is an Lt , the rules are different?  That's not equal justice, is it?  Is he so valuable that the traditional of the corps gets erased by this Marine? I saw on insta that the army jokes about "you can't spell lost without an l t ", is that not a real thing?  This infantry officer is really that valuable? Is S██████ today's Smedley Butler?  I couldn't find any citations for the joint targeting schools' Smedley.

I know, that Colonel rat chick is aware and yet refuses to act. We had an unpleasant conversation the other day.  Simply Colonel, the joint targeting school condones mcuj violations.  Although adultery is a crime in Virginia and the military's judicial system, it's kosher when Lt S██████ does it. Colonel Ratchick why was that again?

Colonel P███ please make a visit to Damn Neck and ask Colonel Ratchick to explain why he condones this distraction from good order and discipline?  This might be a systematic problem at the joint targets school or just Lt S██████ is just an infantry officer who doesnt know any better. My guess is that S██████ is just above the rules.  He is on the "semper eye " program. Just ask him!

I am under the impression that Colonel  Ratchick knows about the affairs and just doesn't want to loose him. I didn't think the army operates that way.

I also wanted to enquire about the term FUOUO.  this term or something close was seen at the bottom of a piece of paper with what looked like  4 power point slides printed on one page.  One slide per quadrant.  At the bottom left corner, it had S██████'s name on it.  It looked very official but wasn't in S██████'s hands.  By the looks of the person, this individual is not military. Is that in your doctrine to allow your FUOUO materials to be read by anyone? I bet the other 2 joint functional schools within J8 protect important material better than Lt S██████.  What happened to need to know?  Pick your favorite political drama and it talks about getting (read in). Was this non military person read in?

Lt S██████ can't have that many years in the military where he is to valuable to loose.  But enough time to know better.  Not the kind of person I'd want rubbing elbows with non-US citizens or being in charge of anything remotely classified.  If he is So careless with FUOUO material domestically what is S██████ like when he goes overseas with out any oversight?  Or closer to home, now that we are training foreign military officers.

I want this envestigated.  When found to be true, take appropriate action

against S████ and the person or people/nation state that might be involved in this security breach.

Is it usually for foreign military to be really good friends with there US instructors?  S████ has come into a lot of money over the past few months around the time we started seeing one of those North African officers come and go from S████'s home.  The story goes he even had his wife and his girlfriend help him entertain this VIP.

Colonel P███ thanks for your time.

Michael Jones
Whistle blower and concerned tax payer

44.     Based on records provided by ISP 1&1 IONOS about

michaeljonrs[@]mail.com ("**USER ACCOUNT AN**"), the IP address associated with the

email account's creation is consistent with the IP address of **JASON LEIDEL**'s home

internet service in Virginia Beach, VA when his account was established in 2017.  A

more recent login activity of the account on March 12, 2019, resolved to the USUHS

campus, in Bethesda, Maryland, where **JASON LEIDEL** was emloyed.  Furthermore,

the name "Michael Jones" bears a similarity to **JASON LEIDEL**'s current email address

that was associated with **JASON LEIDEL**'s Apple account adam.zz.jones[@]msn.com

("**USER ACCOUNT AB**").  Therefore, I believe that **JASON LEIDEL** created and

used the electronic mail address michaeljonrs[@]mail.com ("**USER ACCOUNT AN**")

to harass M████ S████ by involving S████'s military chain of command in

unsubstantiated allegations.  Based on records provided by Apple,

adam.zz.jones[@]msn.com ("**USER ACCOUNT AB**") and leidel[@]aol.com ("**USER**

**ACCOUNT AA**") were registered to the same Apple iPhone SE with serial number

FFWD45Z0PLJM.  Apple iPhone SE with serial number FFWD45Z0PLJM was

registered to **JASON LEIDEL** using his full name, email address **USER ACCOUNT**

**AA**, cell phone number and street address on August 20, 2020. This phone was later registered to **USER ACCOUNT AB** on November 13, 2021. Because the adam.zz.jones[@]msn.com account was subsequently registered to the same Apple iPhone SE with serial number FFWD45Z0PLJM, I also believe that **JASON LEIDEL** is the account owner for all online accounts associated with the email address adam.zz.jones[@]msn.com ("**USER ACCOUNT AB**").

## FALSE ALLEGATIONS TO CHILD PROTECTIVE SERVICES

45.     I believe that as late as May 2019, **JASON LEIDEL** engaged in a scheme of attempted parental alienation of MINOR 1 and MINOR 2 against E█ L█ in order to force E█ L█ to relinquish any claim to **JASON LEIDEL**'s retirement income, including his military retirement.

46.     From September 27, 2018, to January 13, 2020, **JASON LEIDEL** made multiple and repeated allegations to the Department of Social Services ("DSS") on at least seven different occasions falsely claiming that E█ L█ neglected and endangered MINOR 1 and MINOR 2. These allegations were made in both his own name as well as anonymously and resulted in referrals to law enforcement as well as the Virginia Commonwealth Attorneys' Office. In cases where the allegations were made anonymously, the complainant used email addresses or names consistent with those used by **JASON LEIDEL** against E█ L█ and other victims [hooknmermaid[@]yahoo.com ("**USER ACCOUNT AE**") and "Michael Jones" the "concerned taxpayer" and purported account owner of michaeljonrs[@]mail.com ("**USER ACCOUNT AN**")] that submitted complaints about M█ S█.

**JASON LEIDEL** was contacted by DSS as well as by members of law enforcement and informed that the allegations were investigated and found to be unsubstantiated.

47.     On May 5, 2019, **JASON LEIDEL** messaged E█████ L████ via Our Family Wizard:

> As a reminder cohabitation is a ucmj offense. I bet any number of law enforcement Agencies would find this FORAC. Cohabitation with a married woman is an easy sell. In fact, I might just reach out to Little Creek this week just to touch base. I hear that my old shipmate is the one of the base JAGs. It will be good to catch up. I respectfully request that you remove these beds from M█████ J██████ 's home and return them to my children ASAP. This is about my children. One of us needs to parent them. The J█████ 's get the beds that I bought but the L████ 's [sic] get forced to sleep on bunk beds? Please explain.

> I took several pictures of [MINOR 2]'s bruises. you need to be aware that lying to authorities about [MINOR 2]'s back has back-fired on you. I intend to notify CPS of your numerous and persistent neglect. Including but not limited to you allowing my children to go to the ocean/sound unsupervised and without adequate sun protection. i have pictures of E████ 's knee. By allowing M█████ J██████ to babysit you make him an ancillary care-giver, which CPS has jurisdiction. Thanks for helping me advocate for my girls. I do appreciate that you did not kill A███ as your [sic] threatened. I laughed when the girls told me that A███ is at M█████ J██████ 's house.

48.     On May 11, 2019, **JASON LEIDEL** messaged E█████ L████ via Our Family Wizard and indicated that he intends to seek custody of MINOR 1 and MINOR 2:

> [MINOR 2] said that the phone wasn't broken. Another lie e███ . You are making it easy on the courts to award me custody. In love with a child molester, permits and apparently condones him using our children for his gratification, severe untreated depression, I'll save the rest for the Judge. You should be ashamed.

49.     On May 26, 2019, **JASON LEIDEL**'s email account leidel[@]aol.com, ("**USER ACCOUNT AA**") received an email purportedly from e███ l████ [@]█████.com ("**USER ACCOUNT AJ**") with the following message:

> Jason

Nice try asshole.  M███ and I are going to get married.  You think that I would let my girls get in the way of that?  He has promised to stop touching the girls.  He loves me.  He is more than just my gravy train, dick.  I can make more children, this is real love.  The girls are tough and will fight through this.

M██'s chain of command knows about our affair and don't care.  We have been dating since September 2018.  M███ is to valuable to lose. Even the Corps knows and this highly decorated war hero isn't going to get in trouble.  Everyone is the Corps cheats.  Lying isn't a problem either.  If you want trouble than pursue perjury charges.  I will just deny writing this email and call FAP some more.  M███ has given me numbers to your chain of command.  I have stories to tell.

E███

In August 2019, this same email that was purportedly sent by E███ L███ to **JASON LEIDEL** was used by **JASON LEIDEL** as the basis to seek emergency custody of MINOR 1 and MINOR 2 from the Virginia Beach court, which will be further explained in paragraph 58 below.

50.     When interviewed by law enforcement, E███ L███ denied writing this email.  Based on records provided by Google, one of e██ l███[@███.com's ("**USER ACCOUNT AJ**") last logins was on May 26, 2019 and its recovery email address was s███teacher[@███.com ("**USER ACCOUNT DE**").  **USER ACCOUNT DE** as well as risingridge███.com ("**USER ACCOUNT DC**") were E██ L███'s compromised email accounts found to be registered to an Apple iPhone 6S that was later seized from **JASON LEIDEL** and **SARAH SORG**'s residence pursuant to a Montgomery County search warrant on August 4, 2020.

51.     On May 29, 2019, three days after the email was sent, **JASON LEIDEL** messaged E██ L███ via Our Family Wizard and indicated that he would like to negotiate their divorce agreement:

Our marital assets have been divided in writing. I am not asking you anything that isn't written in our signed agreement. The only things that I would even consider having you remove from our signed agreement is your taking any of my military pension or my retirement money. This is what you have agreed to throughout our marriage. "if we ever got divorced, I want *nothing* from you. no pension, no retirement, nothing!" If that is something that you are alluding to 'possibly renegioted', [sic]what is it that you would want in return? If this is not what you are talking about, then what else is there to negotiate?

52.     On June 13, 2019, **JASON LEIDEL** messaged E███ L███ via Our

Family Wizard, where he references M████ S█████, T███ Y███, and M███ Y███,

and makes false allegations against M████ S█████:



You are assigning blame or at a minimum holding me responsible for things that I don't have control. Have you reached out to wider circle? [T███ Y███], his wife [M████], Garett, Trey (and their wives/girlfriends), I can list many more, Lynda, Myron, your Christian family, [M████ S█████'s] wife, who [M████ S█████] admitted to being arrested for beating, [M████ S█████'s] family, [M████ S█████'s] coworkers, neighbors, his kids teachers, etc. if you truly don't think I am 'smart enough to be behind it' (your words), then why have this requirement? It appears that your message is just for show. I can't agree to something that I am not involved [in].

53.     On August 6, 2019, **JASON LEIDEL** messaged E███ L███ via Our

Family Wizard and warned E███ L███ that if E███ L███'s complaints against him for

harassment and cyberstalking are successful, MINOR 1 and MINOR 2 may not receive

financial support:

It appears that [you?] enjoy fabricating items just to fight with me. I am not going to continue to engage this level of petty. I have offered to you and those around you an opportunity to move forward in a positive direction. I need you to make the first move and quickly. I need you to pay me the entire amount including court costs for our furniture ($4105.37) and for you to drop the peace bond complaints, both of them. The furniture payment is overdue and the peace bond complaints, only hurt my girls. You might derive satisfaction for pulling one over on the courts. As you know, if your complaints are successful, you do not benefit financially (the $7500 goes to the city of VA Beach) and my girls end up losing out from your complaints. Do you think the Navy is going to keep me around

with a criminal record? Let alone the vile web of lies that you are telling? I don't. I will most likely keep my VA disability pension (tax free, not considered income and therefore no child support) but will probably lose any nonservice-connected health insurance. I won't have any income and therefore by law won't have to assist you with covering any of the school district's health insurance premium, etc. The positives here are that I have the facts on my side and since you got me fired, I will petition the court to have you pay me alimony. That's hardly a positive, do you agree?

54.    On August 8, 2019, **JASON LEIDEL** messaged E██ L██ via Our Family Wizard and threatened to call Child Protective Services ("CPS") on E██ L██ again:

I stand by my intent to contact the local police as well as the VA Beach CPS on your neglect. You have been adequately notified that your intention of turning my children over to me on this visit without adequate clothing is neglect and will handled with the utmost vigor of the law. People have had their children taken away for much less. plus in aggregate….

55.    On or about August 11, 2019, E██ L██ left MINOR 1 and MINOR 2 with **JASON LEIDEL** as part of a scheduled summer visit.

56.    On August 14, 2019, **JASON LEIDEL** messaged E██ L██ via Our Family Wizard to express his interest in modifying their divorce agreement:

On this past Sunday you mentioned an interest in modifying our ironclad signed PSA. I welcome the opportunity to discuss this with you and/or your attorney. However, unless you are willing to voluntarily forgo additional monies (e.g. military pension, TSP, IRA, cash, etc.) then I remain committed to our signed agreement. It's obviously a good and fair deal if neither one of us is claiming victory.

57.    On or about August 13, 2019, CPS investigated an allegation made against E██ L██ for child abuse – the day before **JASON LEIDEL** sought to renegotiate his divorce settlement.

58.    On or about August 15, 2019, **JASON LEIDEL** was awarded temporary emergency custody of MINOR 1 and MINOR 2, based on an email purportedly sent by



E███ L██ from e███H█████████.com ("**USER ACCOUNT AJ**") as mentioned in paragraph 49.

59.    On August 20, 2019, **JASON LEIDEL** messaged E███ L██ via Our Family Wizard to repeat his desire to modify their divorce agreement while he still had emergency custody of MINOR 1 and MINOR 2:

> I have not heard from you or your attorney. Are you still proposing that you give up All of your claims on my military pension and my retirement accounts (TSP, IRA, etc.)?

60.    On or about September 13, 2019, Judge Tanya Bullock of JDRC ordered custody to be granted back to E███ L██ after **JASON LEIDEL** was found to be in violation of the Peace Bond.

61.    On or about October 16, 2019, **JASON LEIDEL** exchanged a series of emails using the leidel[@]aol.com ("**USER ACCOUNT AA**") and with W███ C██'s ("C██") email account, e███████[@]gmail.com. C██ is a longtime friend and close associate of **JASON LEIDEL**. **JASON LEIDEL** authored and substantially altered part of an affidavit originally drafted and signed by C██ to be submitted to the JDRC. In that series of email exchanges between **JASON LEIDEL** and C██, **JASON LEIDEL** said:

> Bill,
>
> Here are the suggested edits to your signed affidavit. The concern is that E██'s attorney is good and the judge already thinks I'm a scumbag. Your information helps me but would be more impactful is just slightly edited.
>
> Notes: The city is Virginia Beach, check the bottom box for Juvenile and Domestic.....
>
> Please review and if you concur, please have notarized.
>
> I'll see you tonight

Jay

The review of leidel[@]aol.com ("**USER ACCOUNT AA**") showed that C███ made

**JASON LEIDEL**'s requested changes to the aforementioned affidavit; however, VBPD

and E██ L███ advised your Affiant that this affidavit was not presented before the

court. I believe that **JASON LEIDEL** intended to use C███'s affidavit to regain custody

of MINOR 1 and MINOR 2.

### JASON LEIDEL'S EMAIL HEADER ANALYSIS

62.     A review of records provided by AOL revealed that on many occasions,

**JASON LEIDEL** would send emails to himself from leidel[@]aol.com ("**USER

ACCOUNT AA**") to **USER ACCOUNT AA**, with information to be retained for future

use. On September 13, 2019, **JASON LEIDEL** sent **USER ACCOUNT AA** and

jason.leidel[@]usuhs.edu an email that contained the following link:

https://toolbox.googleapps[.]com/apps/messageheader/.  An open source review of the

link was to the Google Admin Toolbox Messageheader analysis tool.  Google's

Messageheader analysis tool allows a user to copy and paste an email header for analysis.

Google's Messageheader analysis tool will parse the email header and display the output

in a more human readable format for additional analysis.  Google's Messageheader tool

would provide the user a way to rapidly determine whether an email was authentic or

spoofed.

63.     On September 25, 2019, **JASON LEIDEL** emailed himself using

leidel[@]aol.com ("**USER ACCOUNT AA**") at least two Google URLs pertaining to the

authenticity of an email.  The two links were:

    a. https://support.google[.]com/mail/answer/180707 which was titled "Check if your Gmail message is authenticated"; and

    b. https://support.google[.]com/mail/answer/180707 which was titled "Trace an email with its full headers."

64.     A forensic review of a Dell desktop seized from **JASON LEIDEL's** and **SARAH SORG**'s residence on August 4, 2020 by MCPD and VBPD, revealed that "eMailTrackerPro" was installed on that computer. eMailTrackerPro is a software program designed to trace emails to the original location by city/town and filter out spam or emails originating from known abused email accounts.

65.     These two links that were **JASON LEIDEL** emailed to himself show that he was aware of the methodology and tools to determine whether an email truly originated from an email account, based on email header analysis, at least as early as September 25, 2019. As such, **JASON LEIDEL** probably would have known whether an email truly originated from E███ L███'s email accounts or was a spoofed email.

66.     Furthermore, on June 28, 2020, **JASON LEIDEL** messaged E███ L███ via Our Family Wizard:

> You have never had to answer for all of your emails or your actions . Or your (or a S██████'s) shooting [MINOR 2] "just to see her cry." Based on Virginia's precedent, the burden of proof is on you to prove that you didn't send me all of those emails from your password protected accounts.

## FORGED MILITARY MEDICAL RECORD

67.     In or about April 2020, **JASON LEIDEL** submitted a copy of what was purportedly part of E███ L███'s military medical record to a Virginia Beach court-appointed psychologist who was evaluating the parental capacity of **JASON LEIDEL** and E███ L███ for MINOR 1 and MINOR 2. The information provided to the court-appointed psychologist would factor into reports that would assist the court in resolving

the issue of custody for MINOR 1 and MINOR 2.  As will be discussed, the investigation

revealed this to be a forged and fraudulent document.

68.     This investigation showed that on or about October 8, 2019, **JASON**

**LEIDEL** used a printer-scanner at the Armed Forces Radiobiology Research Institute

("AFRRI"), Bethesda, MD, to scan the forged military medical record of E██ L██ and

sent it to his personal email address, leidel[@]aol.com ("**USER ACCOUNT AA**").

AFRRI is a secure facility with restricted physical access.  Use of the AFRRI scanner

required physical access to the controlled space inside AFRRI.  Security personnel at

AFRRI confirmed that **JASON LEIDEL**'s CAC card was approved for access to AFRRI

during the aforementioned time period.

69.     The email sent to **USER ACCOUNT AA** that contained the forged

military record was sent from "AFRRI-3116[@]usuhs.edu." This was the email address

assigned to the scanner located in mail room number 3116. This mail room was located in

the controlled space of the AFRRI facility. A further review of **USER ACCOUNT AA**

confirmed that **JASON LEIDEL** used this scanner on multiple occasions for personal

use.  On October 16, 2019, **USER ACCOUNT AA** received an email with an attachment

from the "AFRRI-3116[@]usuhs.edu."  This email contained a six-page attachment,

containing military medical records purportedly belonging to E██ L██.

70.     The suspected forged medical record made it appear that E██ L██ was

admitted to a military treatment facility associated with the 88th Medical Group at

Wright-Patterson AFB, OH, on September 30, 2007 for a mental health crisis.  The

forged military medical record described E██ L██ as having attempted suicide and as

a user of cocaine. The forged military medical record used E████ L████'s identifiers including but not limited to E████ L████'s date of birth and social security number.

71.     Additionally, a forensic review of the Dell desktop seized from **JASON LEIDEL** and **SARAH SORG**'s residence on August 4, 2020, by MCPD and VBPD located a digital file containing the suspected forged military medical record.  Because the court-appointed psychiatrist sent her report to the court, [and there were limitations on the disclosure of that report], **JASON LEIDEL** would not have had access to that document, unless he submitted that document to the court-appointed psychologist.

72.     A review of **JASON LEIDEL**'s military records and information provided by E████ L████ revealed that **JASON LEIDEL** was assigned to Wright-Patterson AFB as a commissioned USAF officer and worked in a military medical treatment facility there in September 2007.

73.     VBPD and NCIS conducted an exhaustive inquiry regarding this document as well as E████ L████'s entire military medical record.  NCIS and VBPD were not able to locate any record or evidence indicating E████ L████ was admitted to a military treatment facility on September 30, 2007.

74.     A review of E████ L████'s military medical history indicated that E████ L████ had medical appointments in August 2007 and October 2007, but not during the month of September 2007.  NCIS and FBI also interviewed two of the physicians whose names appeared within the forged military medical record who supposedly treated E████ L████.  The two physicians (PHYSICIAN 1 and PHYSICIAN 2), indicated that they did not treat patients that would have been admitted under the same circumstances E████ L████ was purportedly admitted.  PHYSICIAN 1 believed that he did not author the

physician notes.  PHYSICIAN 2 stated that he was not stationed at Wright-Patterson

AFB at the time E███ L███ was alleged to have been admitted to the military treatment

facility on Wright-Patterson AFB.

75.     As stated in paragraph 67, **JASON LEIDEL** provided this document to

the Virginia Beach court-appointed psychologist, PHYSICIAN 3, for the Leidel child

custody case.  The PHYSICIAN 3 stated that the forged military medical record of E███

L███ did not play a significant factor into evaluation because she was unable to verify

its authenticity.  E███ L███ had advised PHYSICIAN 3 that the aforementioned

military medical record was fraudulent when asked about it.  However, if the military

medical record were deemed to be authentic, the psychologist advised investigators that

the record could have resulted in the loss of custody of MINOR 1 and MINOR 2 for

E███ L███.

## RESIDENTIAL SEARCH WARRANT OF
## JASON LEIDEL AND SARAH SORG'S RESIDENCE

76.     On August 4, 2020, MCPD and VBPD executed a residential search

warrant of **JASON LEIDEL's** and **SARAH SORG**'s residence because their

investigations led them to believe that **JASON LEIDEL** committed computer

harassment.  MCPD and VBPD seized digital evidence including but not limited to

multiple computers and external hard drives believed to belong to **JASON LEIDEL**.

**JASON LEIDEL** was arrested by MCPD on a warrant from the Commonwealth of

Virginia, for violations of Code of Virginia 18.2-152.7:1 "Harassment by computer".

**SARAH SORG** was also provided with a copy of the MCPD search warrant and

application which contained the following as part of the affidavit:

On January 16, 2020 Detective LINDEMEYER received a police report where a Child Protective Services (CPS) report had been made in the name of E███ L██████'s boss. The claims in the report had been proven to be false. Her boss advised that he had not made the report to CPS and had no knowledge as to who had made it. After the initial complaint, CPS received several additional emails that accused E███ L██████ of abusing students and asking for the initial complaint that had been made in her boss' name. These emails displayed the identifying information of the email addresses of the sender. Two of the emails originated from Yahoo accounts and one originated from a Google account.

Detective LINDEMEYER obtained court orders for the Yahoo and Google email accounts. The two Yahoo email accounts were registered to the same phone number (███████-2915 and had used the same IP (Internet Protocol) address connections. That phone number had been by the user through a two-step authentication process. This process requires the person who created the account to enter a passcode sent to that phone number in order to verify their identity. Detective LINDEMEYER obtained a court order for that phone number and determined that it was registered to **JASON LEIDEL**.

77.     On August 4, 2020, **SARAH SORG** emailed her immediate supervisor and stated "the kids aren't going to camp today." **SARAH SORG** sent other emails about needing to telework and stated the request is due to "camp" throughout the day.

78.     Based on records provided by Yahoo Inc., the accounts (1) sarahesorg[@]yahoo.com ("**USER ACCOUNT BC**") registered with the name "Sarah Sorg", date of birth Xxxxxxxxx XX, 1979, recovery email accounts sarah.sorg[@]dot.gov ("**USER ACCOUNT BE**"); and (2) sarahesorg[@]gmail.com ("**USER ACCOUNT BA**"), and verified recovery phone number of +1XXXXXX4114 which matches **SARAH SORG**'s known cell phone number. Based on my training and experience, I submit the user account sarahesorg[@]yahoo.com ("**USER ACCOUNT BC**") belongs to **SARAH SORG**.

79.     A review the Sent email folder for **SARAH SORG**'s email account, sarahesorg[@]yahoo.com ("**USER ACCOUNT BC**") also revealed a series of email sent

on August 26, 2020 to sscontinues[@]gmail.com ("**TARGET ACCOUNT BB**"), a
Google account created by **SARAH SORG** on August 9, 2020 while **JASON LEIDEL**
was incarcerated in a Montgomery County jail:

     a.   August 5 screenshots

     b.   August 6 screenshots

     c.   August 9 screenshots

     d.   August 10 screenshots

     e.   August 18 screenshots

     f.   August 19 screenshots

     g.   August 20 screenshots

     h.   August 21 screenshots

80.    All of the emails listed above were also located in email account
sscontinues[@]gmail.com ("**TARGET ACCOUNT BB**"), with the exception of the
following two emails:

     a.   August 9 screenshots

     b.   August 20 screenshots

81.    The content of the aforementioned emails from sarahesorg[@]yahoo.com
("**USER ACCOUNT BC**") included the following screenshots which would associate
**JASON LEIDEL**'s cell phone number with the following accounts:

 

82.     Based on training and experience as well as a review of **SARAH SORG**'s

electronic accounts, I believe **SARAH SORG** became aware of information that linked

multiple fraudulent online accounts used to harass and victimize E██ L██ by **JASON**

**LEIDEL** as early as August 2020.  I believe that **SARAH SORG** selectively deleted

emails from sscontinues[@]gmail.com ("**TARGET ACCOUNT BB**") containing

relevant information attributing other fraudulent online accounts to **JASON LEIDEL**.

83.     Since then, **SARAH SORG** has continued to provide assistance to

**JASON LEIDEL** in his scheme to harass E██ L██, interfere with court proceedings

relating to domestic relations issues, and perpetrate fraud on courts in both Montgomery

County, MD and Virginia Beach, VA.  Prior to the August 4, 2020, residential search

warrant, **SARAH SORG**'s correspondence with **JASON LEIDEL** indicated she

believed E█ L███ to be reasonable with **JASON LEIDEL**.  For example, on

February 12, 2020, **JASON LEIDEL** asked for **SARAH SORG**'s thoughts regarding

E█ L███'s response to his multiple lengthy Our Family Wizard messages regarding

MINOR 1 and MINOR 2: "I have copied and pasted the portions of your messages that

require responses.  My responses are below each paragraph…"  **SARAH SORG** replied

to **JASON LEIDEL**, "Seems reasonable on the whole."

84.    Approximately two weeks after **JASON LEIDEL**'s arrest**, SARAH

SORG** posted bail for **JASON LEIDEL**, and **JASON LEIDEL** was subsequently

released from a Maryland jail on or about August 19, 2020.  **JASON LEIDEL** was

required to turn himself into a Virginia Beach jail within 24 hours.  **JASON LEIDEL**

was processed at a Virginia Beach jail on August 20, 2020, at approximately 3:30pm.

**JASON LEIDEL** posted bond and was later released from a Virginia Beach jail.

85.    On September 4, 2020, **SARAH SORG** sent an email to **JASON

LEIDEL**'s attorney and copied his email account, leidel[@]aol.com ("**USER**

**ACCOUNT AA**"), from her email account sarahesorg[@]yahoo.com ("**USER**

**ACCOUNT BC**").  The content of her email suggested she was trying to influence

**JASON LEIDEL**'s criminal defense:

> Hi Wayne,
>
> Who is representing Jason in the 10/1/20 failure to comply with court order
> criminal case?  Jason has not yet been contacted.
>
> We need to get discovery in connection with that case.  Plaintiff now claims to
> have picture of the dog feces that were never presented at [JDRC].  (She included
> it as an exhibit in the divorce case....  I hope Nora or whoever is planning on filing
> a motion to strike some of the exhibits listed in the pretrial submission on
> relevance and to file a motion for attorney fees).

We have never seen this supposed feces evidence. We want to avoid surprises at the criminal trial.

Also, we were unable to get the affidavit in support of the arrest warrant in Va Beach for the computer harassment claim. Jason said jdr didn't have it and apparently it wasn't in circuit court either. We need to know the basis of their case. And we need to have someone file discovery on the case. (The detective told Nora today that she has evidence linking that one of the emails was sent from his computer. We don't know what she was referring to and when this allegedly occurred. E███ or the children might have sent the email, if any such email was actually sent).

With respect to the hearing today that Nora went to, we were disappointed with the superseding court order in the protective order case. It was not what Jason agreed to, and I understand that since nora wasn't present, the judge decided to let the order expire at midnight, which meant that he couldn't say goodbye to his kids who were there. It also limited the visitation that had been previously granted. He also didn't get access to their personal cell phone numbers like he had requested. We would request that he not get billed in full for today's representation.

Please let us know ASAP who is handling the criminal piece. October 1 is fast approaching and i wouldn't put anything past E███ (she basically lied at in last affidavit).

Thank you,
Sarah Sorg

## SEPTEMBER 15, 2020 EXTORTION LETTER

86.     On September 17, 2020, **JASON LEIDEL** forwarded an email to

**SARAH SORG's** email account sarahesorg[@]yahoo.com ("**USER ACCOUNT BC**")

from a paralegal from Holcomb Law, P.C.:

Mr. Leidel,

Please find attached, our Subpoena Duces Tecum propounded to E███ through the Commonwealth Attorney's Office for your records. We may have to continue the October 1, 2020 trial date if they are not compliant with our requests; however, you and Mr. Wheeler can talk about that later.

Respectfully,
Jess Wilmott-Allen
Executive Paralegal

87.     Based the VBPD investigation, VBPD Detective Chelsea Lindemeyer believed that **JASON LEIDEL** would have been found in violation of the aforementioned Peace Bond at a JDRC hearing on October 1, 2020.  This Peace Bond issued on February 22, 2019, ordered **JASON LEIDEL** to not have "harassing contact… will not access any of [E███ L███]'s accounts, social medial, email and apple accounts."

88.     On or about September 20, 2020, **SARAH SORG** claimed to have received an extortion letter in the U.S. mail which was made to appear as if it was sent by E███ L███.  The extortion letter was post marked from Richmond, VA on September 15, 2020.  The letter attempted to extort **SARAH SORG** for $28,500 and threatened to harm **SARAH SORG**, **SARAH SORG**'s minor children, and **JASON LEIDEL**:



89. On or about September 20, 2020, **SARAH SORG** filed a police report with MCPD (Report Number 20-0036922) alleging that she received an extortion letter from E⬛ L⬛. **SARAH SORG** provided the police with a picture of the envelope containing the alleged threat:



90.     On September 21, 2020, **SARAH SORG** applied for charges against ██

L██ at the Montgomery County District Commissioner based on the extortion letter.

**SARAH SORG** was provided documents from the Montgomery County Commissioner's

Office advising her that she would be required to discuss the charges with a

representative from the Montgomery County State's Attorney's Office on either

September 29, 2020, September 30, 2020, or September 31, 2020:[8]

---

8 While **SARAH SORG** was offered September 31, 2020 as a potential appointment date to meet with the MCSAO, this date was offered in error as the month of September only has 30 days.

**State's Attorney for Montgomery County**
50 Maryland Avenue
Rockville, Maryland 20850

STATE'S ATTORNEY
JOHN J. McCARTHY

(240) 777-7300
FAX (240) 777-7413
WWW.MONTGOMERYCOUNTYMD.GOV/SAO

DEPUTY STATE'S ATTORNEYS
LAURA CHASE
PETER A. FEENEY

Dear Mr. /Ms. Complainant:                    Case # 6D00412929

A District Court Commissioner has just issued a District Court charging document at your request and on your oath alleging the commission of a crime in Montgomery County, Maryland.

In order for this case to be properly evaluated and prepared, you must appear in person at the Office of the State's Attorney for Montgomery County on one of the three days/times listed below, and you must bring the copy of the charging document given to you by the Commissioner. At that time, you will meet with a representative of the State's Attorney's Office to determine the most appropriate way to proceed with the case.

---

**YOU MUST REPORT TO THE OFFICE OF THE STATE'S ATTORNEY ON ONE OF THE FOLLOWING DAYS, AND YOU MUST REPORT DURING APPLICABLE HOURS OF OPERATION (MONDAY AND WEDNESDAY FROM 8:30 A.M. TO 12:30 P.M. ONLY, OR TUESDAY AND THURSDAY FROM 1:30 P.M. TO 5:00 P.M. ONLY):**

---

___09/29/2020___ , **OR** ___09/30/2020___ , **OR** ___09/31/2020___
    DATE                        DATE                        DATE

- **IMPORTANT:  If the dates set forth above require you to visit the Office of the State's Attorney on a Monday or Wednesday a representative of the office will be available to meet with you between 8:30 a.m. and 12:30 p.m. only.**

- **IMPORTANT:  If the dates set forth above require you to visit the Office of the State's Attorney on a Tuesday or Thursday, a representative of the State's Attorney's Office will be available to meet with you between 1:30 p.m. and 5:00 p.m. only.**

- **IMPORTANT:  *Do not come within the first 48 hours after the filing of the charging document!***

- **IMPORTANT:  *If you fail to appear for your conference on one of the days designated above, the State's Attorney's Office will decline to prosecute your case.***

John J. McCarthy, State's Attorney for
Montgomery County, Maryland

I acknowledge receipt of this form:

X _____                    ___09/21/2020___
  Complainant's Signature                          Date

VICTIM'S COPY – WHITE   •   STATE'S ATTORNEY COPY – YELLOW   •   COURT COPY – PINK

---

91.     Also on September 21, 2020, **SARAH SORG** was granted a preliminary peace order against E██ L███ by the Montgomery County District Court, as a result of her allegation that she received an "extortion letter" from E██ L███ threatening physical violence against her family.  The District Court scheduled a hearing for **SARAH SORG**'s request for a full peace order against E██ L███ for September 28, 2020.

92.     Before **SARAH SORG**'s appointment with the Montgomery County

State's Attorney's Office for "[the] case to be properly evaluated and prepared", the

Virginia Beach JDRC hearing, or the Maryland District Court hearing for a full peace

order against E██ L██l, **SARAH SORG** initiated contact with law enforcement in

Virginia Beach to have E██ L██ arrested.  A review of Verizon Wireless phone

records for **SARAH SORG**'s number XXX-XXX-4114, showed that on Thursday,

September 24, 2020, three outgoing calls were made to phone numbers with the Virginia

Beach 757 area code:

| Time | Phone Number | Entity |
|------|--------------|--------|
| 11:06 a.m. | 757-385-4555 | Virginia Beach Sheriff's Office |
| 11:11 a.m. | 757-385-8170 | Virginia Beach Police Department Service Department |
| 11:15 a.m. | 757-385-2703 | Virginia Beach Police Department 3rd Precinct |

93.     On or about Friday, September 25, 2020, the VBPD arrived at E██

L██'s residence in Virginia Beach, VA, and arrested her based on an extradition

warrant from the State of Maryland.  E██ L██ was jailed for approximately four days

in Virginia Beach, VA, as a result of the application for charges filed by **SARAH SORG**

at the Montgomery County District Commissioner's Office.

94.     According to VBPD Detective Chelsea Lindemeyer, the initiation of E██

L██'s arrest was unusual.  The first attempt to arrest E██ L██ was conducted by

School Resources Officers who do not normally execute arrest warrants.  Furthermore,

VBPD's normal protocol for warrant services from out-of-state jurisdictions is to attempt

the service only when the out-of-state jurisdiction calls to request the service.  Based on

VBPD records and information provided by MCPD, there was no indication that a law

enforcement agency from Maryland contacted VBPD to request the service of the arrest

warrant.  In both cases involving the School Resources Officers on the initial attempt and

the VBPD on the second attempt, this service was field initiated and did not come in

through VBPD's dispatch service.  Therefore, I believe the **SARAH SORG**'s multiple

communication attempts with law enforcement in Virginia Beach resulted in E█

L██'s arrest.

95.    On Monday, September 28, 2020, **JASON LEIDEL** and **SARAH SORG**

were granted a final protective order from E██  L██ in Montgomery County court due

to E██  L██'s failure to appear for the court hearing which was as a result of her

incarceration in Virginia Beach and being unable to be represented.

96.    Later on September 28, 2020, E██  L██ was released from custody and

all charges against her were dropped by the Commonwealth's Attorney in Virginia

Beach, Virginia.  E██  L██ immediately appealed the final protective order ruling in

Montgomery County court upon her release.

97.    On September 29, 2020, **JASON LEIDEL** emailed Jill Costen, E██

L██'s attorney, and Peter Imbrogno, the *guardian ad litem* for MINOR 1 and MINOR

2 from leidel[@]aol.com (" **USER ACCOUNT AA**"):

> Sir/Ma'am,
>
> Could you please tell me the whereabouts of [MINOR 1] and [MINOR 2]?  I
> haven't spoken with either of them since Wednesday or heard from them since
> that time.  I am concerned for their whereabouts, especially since it has come to
> my attention that E██ spent this past weekend in jail.  Where were [MINOR 1]
> and [MINOR 2] this past weekend (25-27 September) and who was taking care of
> them?
>
> From what I was able to put together, it is my belief that E██ was arrested Friday
> morning some time before 10:30 AM.  Ms. Costen emailed me at 11:12, Friday
> morning and did not mention E██'s arrest.  As of right now, no one has informed

me that E███ was incarcerated.  I only found out yesterday afternoon about
E███'s arrest, when I checked to see if E███ complied with the subpoena that my
criminal attorney issued for E███.

This is another example of how this current situation is untenable.  I am rarely
able to reach the girls via the prepaid phone.  E███ and I share joint legal custody.
How come neither CPS, the police, sheriffs, etc nor either one of you, notified me
that E███ was incarcerated?

I need to know that [MINOR 1] and [MINOR 2] are ok.  Once E███ was taken
into custody, I should have been notified.  I contend that it should have been my
decision as to where and with whom [MINOR 1] and [MINOR 2] stayed until
E███'s release from prison. I was denied the opportunity to make that choice.
GAL, yesterday afternoon, I called your office and spoke with Taylor.  Hopefully,
she was able to give you message.

I also wanted to let you know that last week, I was granted the Maryland version
of a PPO against E███.  The protective order has now become final (PO) and will
last for one year.  I also believe that E███ violated the no "communication"
portion of the VB JDR court order from 4 September 2020.

Jason Leidel
████2915

98.     On September 30, 2020, one day prior to **JASON LEIDEL**'s JDRC

hearing for his alleged violation of a Peace Bond, **SARAH SORG** sent VBPD Detective

Chelsea Lindemeyer the following email from sarahesorg[@]yahoo.com ("**USER**

**ACCOUNT BC**"):

Dear Detective Lindemeyer,

I reached out to the Virginia Beach non-emergency number to make a report, but
the intake offer indicated that I should reach out to you.  The reason why I am
reaching out to you is that the threatening letter I received may relate to case
number JA158686-03-00 that you are investigating.

I received a letter on September 20, 2020 attempting to extort me and making
threats against Jason Leidel, myself and my children.  I believe that based on the
contents of the letter *and the fact it was postmarked from Virginia*, Ms. E███
L███ sent this letter to me.  I have attached a photograph of the letter and the
envelope.  The letter demands that I pay $28,500 by the end of September, and
states, "Imagine what will happen if I convince my friends on the force that you
had a major roll in there investigation?  I bet you get disbarred.  Just pay me and

this goes away."  I believe this is referring to the criminal case involving Jason Leidel where ██ L██ is the complainant.  Since it is the end of September, and I have no intention on paying any money in connection with this, I thought it would be prudent to let you know.

I have already filed a police report with the Montgomery County Maryland Police Department and have applied for charges through the Maryland Commissioner.  (I believe that Ms. L██ was arrested in Virginia Beach in connection with the Maryland case).  I also received a peace order against Ms. L██ because of the threat of bodily harm contained in the letter.

Please let me know if you need anything further.

Sincerely,
SARAH SORG

**EXTORTION LETTER ALIBI**

99.     On September 22, 2020, **JASON LEIDEL** forwarded to **SARAH SORG**

an email containing advice he received from his attorney regarding his allegation that

VBPD is "compromised":

Mr. Leidel:

In the event you feel that the Virginia Beach Police Department is somehow compromised (please note, E██'s representation that she has 'friends on the force' are at this point unsubstantiated and originate from a person you already know to be dishonest and adversarial; hence, it would carry little, if any, weight), your next options are to either approach this through the Virginia State Police, Police in Maryland, or the FBI.  Each of those entities are well established and generally conduct sufficiently thorough investigations that there is usually little defense once they actually bring charges.  I advise those wanting to get to that level to thread cautiously, because they will also investigate the source of the complaint, meaning both you and your girlfriend.

Respectfully,

Earl J. Wheeler

Based on **SARAH SORG**'s employment as a Senior Trial Attorney for DOT, she was in

a position to refer the matter to federal authorities, but neither she nor **JASON LEIDEL**

did so.  In fact, **SARAH SORG**'s first interaction with the FBI was when your Affiant and FBI Special Agent David Paniwozik arrived at her residence to serve **JASON LEIDEL** a target letter on November 21, 2021.  A target letter is a letter issued by an Assistant United States Attorney (AUSA) to an individual where the Government advised the individual that he/she is the "target," or focus, of a criminal investigation.  By DOJ policy, that letter advises the target that the Government believes there is sufficient evidence to prove the target's guilt, beyond a reasonable doubt, for one or more federal violations.  That letter advises the individual to contact the undersigned AUSA, individually or through an attorney, in a short time period, in order to address the matter. Your Affiant clearly identified himself and his companion as FBI Special Agents and asked for **JASON LEIDEL**.  **SARAH SORG**'s immediate and only response was, "[D]o you have a warrant?"

100.    On September 23, 2020, **JASON LEIDEL** sent an email from leidel[@]aol.com ("**USER ACCOUNT AA**") to **SARAH SORG**'s email account sarahesorg[@]yahoo.com ("**USER ACCOUNT BC**") with subject title "information requested" stating, "Let me know what else I can help you track down.  This pdf is searchable.  Please let me do the legwork for you."  The "pdf" that **JASON LEIDEL** is referring to is a PDF email attachment containing Our Family Wizard messages between **JASON LEIDEL** and E███ L███

101.    On or about September 23, 2020, **JASON LEIDEL** sent an email from leidel[@]aol.com ("**USER ACCOUNT AA**") (herein referred to as the "Extortion Letter Alibi Email") to **SARAH SORG**'s email account, sarahesorg[@]yahoo.com ("**USER ACCOUNT BC**"), with the email subject, "why it no be us" and contained a Microsoft

Word document describing a timeline to account for **JASON LEIDEL** and **SARAH SORG**'s whereabouts from September 14, 2020, to September 15, 2020.

102.     This particular email was located in the "Legal" subfolder of sarahesorg[@]yahoo.com ("**USER ACCOUNT BC**").  Based on my training and experience, your Affiant believes that emails are normally received in the "Inbox" or another subfolder designed for "spam email".  By locating this email in a user created "Legal" subfolder, I also believe from my training and experience that **SARAH SORG** reviewed this email and manually sorted or moved it from the "Inbox" to her "Legal" subfolder.

103.     The purpose of the timeline seems to provide an explanation as to why **JASON LEIDEL** and **SARAH SORG** could not have mailed the extortion letter to themselves.  The first line of the Microsoft Word document stated, "To quote the great rapper, Shaggy, 'It wasn't me' and here's why."[9]   **JASON LEIDEL** indicated that he

---

[9] This quote appears to be a pop culture reference to a song depicting an individual asking rap star Shaggy what to do after his girlfriend caught him cheating on her with the girl next door.  Shaggy's advice in the song is to deny everything, using the phrase "It wasn't me," despite overwhelming evidence to the contrary (chorus in parentheses):

To be a true player you have to know how to play
If she say a night, convince her say a day
Never admit to a word when she say and if she claims
And you tell her baby no way

But she caught me on the counter (It wasn't me)
Saw me bangin' on the sofa (It wasn't me)]
I even had her in the shower (It wasn't me)
She even caught me on camera (It wasn't me)

She saw the marks on my shoulder (It wasn't me)
Heard the words that I told her (It wasn't me)
Heard the scream get louder (It wasn't me)

was at or near his residence all day.  The timeline did not account for **SARAH SORG**'s

whereabouts from approximately 10:15am to 7:30pm on the evening on September 15,

2020, the day the extortion letter was postmarked.  The timeline suggested that **SARAH**

**SORG** emailed her supervisor at approximately 10:45 am to inform her supervisor that

**SARAH SORG** was not feeling well.

104.    DOT Office of the Inspector General ("OIG") conducted a preliminary

review of **SARAH SORG**'s time sheet.  The review indicated that **SARAH SORG**

frequently informed her supervisor that she was ill during those times when **JASON**

**LEIDEL** had legal appearances.

105.    A review of **SARAH SORG**'s DOT account, sarah.sorg[@]dot.gov

("**USER ACCOUNT BE**") and her work computer, showed that **SARAH SORG** tracks

the majority of **JASON LEIDEL**'s criminal and civil court appearances using her work

email account's calendar for sarah.sorg[@]dot.gov ("**USER ACCOUNT BE**").

106.    The aforementioned "Extortion Letter Alibi Email" containing the

exculpatory timeline for **JASON LEIDEL** and **SARAH SORG** was never provided to

She stayed until it was over

Honey came in and she caught me red-handed
Creeping with the girl next door
Picture this, we were both butt naked
Banging on the bathroom floor
I had tried to keep her
From what she was about to see
Why should she believe me
When I told her it wasn't me

https://www.lyrics.com/lyric/27328535/Shaggy/It+Wasn%27t+Me (last accessed July 12,
2022)

investigators.  Instead, the following two summary documents were provided to MCPD

Detective Sergeant Paul Reese.

107.    On or about September 24, 2020, correspondence between **JASON

LEIDEL** and **SARAH SORG's** email accounts leidel[@]aol.com ("**USER ACCOUNT

AA**"), sarahesorg[@]gmail.com ("**USER ACCOUNT BA**") and

sscontinues[@]gmail.com ("**USER ACCOUNT BB**") indicates that **JASON LEIDEL**

and **SARAH SORG** collaboratively drafted two Word Documents with the following file

names: (1) "Examples of Harassing Conduct by E█ L█"; and (2) "Extortion and

Threat Summary re EL"  These two documents were provided by MCPD Detective

Sergeant Reese and also reviewed by your Affiant pursuant to search warrants of

leidel[@]aol.com ("**USER ACCOUNT AA**") and sarahesorg[@]gmail.com ("**USER

ACCOUNT BA**").  "Extortion and Threat Summary re EL" claims to provide

"information to support the contention that the letter received was from E█ L█".

"Examples of Harassing Conduct by E█ L█" contains **SARAH SORG**'s conjecture

of how she may have been harassed previously harassed by E█ L█.  The only

witness **SARAH SORG** mentions in this document other than **JASON LEIDEL** is

W█ C█ who expresses doubt of their suspicions that E█ L█ or E█

L█'s "surrogate" was in the vicinity of their residence.  Neither document offers any

evidence that E█ L█ authored or sent the Extortion Letter or that E█ L█

harassed **JASON LEIDEL** or **SARAH SORG** as they contend.

108.    A review of records provided by JP Morgan Chase for **JASON

LEIDEL**'s Chase credit card, showed that **JASON LEIDEL** made purchases at gas

stations and convenience stores in the vicinity of Virginia Beach on or about September

16, 2020.  Based on information provided by VBPD, **JASON LEIDEL** checked into

Oceans 2700, a hotel in Virginia Beach, on September 16, 2020, and checked out at

approximately 7:30am on September 17, 2020.

109.    On September 29, 2020, **JASON LEIDEL** sent an email from

leidel[@]aol.com  ("**USER ACCOUNT AA**") to **SARAH SORG**'s email account,

sarahesorg[@]yahoo.com ("**USER ACCOUNT BC**") stating:

> Sarah,
>
> The current balance in the CIT account is ~$6400. On 1 October 2020, I will
> transfer $2821 ($2646 for legal fees and $175 for patching the roof) to your
> Suntrust account.  I will also transfer ~$55 (per your suggestion) to cover my
> hotel cost in Va beach on 16 September.
>
> The remaining balance in this account will be about $3530.  The estimate for the
> roof is $3870.  You are looking about about [sic?] $340 out of pocket for a new
> roof.  Pending HOA approval.
>
> VR
>
> Jason

The reference in this email to **SARAH SORG** stating that **JASON LEIDEL** would

transfer $55 to her SunTrust bank account, per **SARAH SORG**'s suggestion, for his

hotel cost in Virginia Beach on September 16, 2020, indicates that **SARAH SORG** was

aware that **JASON LEIDEL** was staying at a hotel in or around the Virginia Beach area

on or about September 16, 2020 which was not accounted for in the "Extortion Letter

Alibi Email" timeline.

110.    Information provided by **JASON LEIDEL**'s military chain of command,

E███ L███'s attorney, and VBPD, indicated no obvious reason, even with child

visitation, for **JASON LEIDEL** to have traveled to Virginia Beach, VA between on or

about and between September 15, 2020 and September 17, 2020.  I believe that **JASON**

**LEIDEL** was in proximity to Virginia Beach, VA, on or about the day the

aforementioned extortion letter was mailed and, in fact, mailed the letter himself.

     111.    On October 9, 2020, **SARAH SORG** was interviewed by MCPD

Detective Sergeant Paul Reese at the 4th District Precinct in Interview Room 2. **SARAH**

**SORG** was advised that the interview would be recorded. **SARAH SORG** indicated that

her actions at the Montgomery County Commissioner's Office "may" have resulted in

E███ L███'s arrest. When **SARAH SORG** was asked if it was possible **JASON**

**LEIDEL** could have sent the extortion letter, **SARAH SORG** admitted that was a

possibility. MCPD Detective Sergeant Paul Reese also posited that **SARAH SORG**

could have written the extortion letter. **SARAH SORG** did not provide MCPD

exculpatory evidence or statements that would indicate that **SARAH SORG** or **JASON**

**LEIDEL** were not in or around Virginia Beach, VA, or Richmond, VA, on or about

September 15, 2020. In fact, based on the DOT OIG's preliminary review of **SARAH**

**SORG**'s emails for sarah.sorg[@]dot.gov, **SARAH SORG**'s official United States

Department of Transportation work email, **SARAH SORG** frequently sends her DOT

supervisor emails with "whereabouts" as the subject when **SARAH SORG** was not

working or requested telework for reasons believed to be related to **JASON LEIDEL** or

**SARAH SORG**'s minor children for administrative matters. However, when

interviewed for the criminal matter regarding the extortion letter, **SARAH SORG** did not

make statements regarding **SARAH SORG** and **JASON LEIDEL**'s whereabouts

referencing the September 24, 2020 Extortion Letter Alibi Email sent from

leidel[@]aol.com ("**USER ACCOUNT AA**") which would have been exculpatory if

true. MCPD Detective Sergeant Paul Reese advised **SARAH SORG** that **JASON**

**LEIDEL** had criminal liability and cautioned her of her continued close association with **JASON LEIDEL**.

112.     On November 16, 2020, **SARAH SORG** continued to pursue a protective order against ██ L███ by testifying in Montgomery County Circuit Court before Judge David Boynton in case number 10173D.  Both ██ L███ and **SARAH SORG** testified that they have only had approximately three in person encounters.  All the encounters occurred in Virginia Beach during child exchanges of MINOR 1 and MINOR 2, and a concert where MINOR 1 and MINOR 2 were present.  These encounters occurred in late February 2020 and early March 2020.  ██ L███ and **SARAH SORG** stated that they had no other communications by any other means since March 2020, to include email, text messages, phone calls or social media. Judge David Boyton ruled in favor of **SARAH SORG** for the protection order against ██ L███.

113.     To date, neither **JASON LEIDEL** nor **SARAH SORG** have provided law enforcement with the physical Extortion Letter and its envelope as evidence.  I believe that the Extortion Letter and its envelope are located in **JASON LEIDEL** and **SARAH SORG**'s residence, the **TARGET PREMISES**.  The requested search warrant would permit law enforcement to seize the Extortion Letter and obtain a sample of DNA from **JASON LEIDEL** and **SARAH SORG** to compare with the mixture recovered from the Extortion Letter and envelope.

### SPOOFED EMAILS

114.     During this investigation, law enforcement uncovered evidence that **JASON LEIDEL** was experimenting with an email spoofing service in preparation to send emails on behalf of ██ L███ and/or against ██ L███.  On approximately

December 1, 2020, an email that appeared to be sent from T██ Y██ using

johnnyonsthespot2020[@]gmail.com ("**USER ACCOUNT AI**") to leidel[@]aol.com

("**USER ACCOUNT AA**") and jason.leidel[@]usuhs.edu ("**USER ACCOUNT AO**")

with "Test" as the email subject and "Testing" as the email body, was received by

jason.leidel[@]usuhs.edu, **JASON LEIDEL**'s official DOD email account.  The use of

the email subject "Test" and the "johnnyonthespot" email address variations is strikingly

similar to the initial correspondence in June 2018 between

johnnyonthespot2017[@]gmail.com ("**USER ACCOUNT AH**") and

risingridge██████.com ("**USER ACCOUNT DC**") explained *infra*.

      115.    Your Affiant conducted an email header analysis which determined that

the email did not originate from johnnyonsthespot2020[@]gmail.com ("**USER

ACCOUNT AI**"),** but rather from Emkei's Fake Mailer, a free website that allows a user

to send an email, including attachments, to any recipient, in which the email appears as

though it originates from an email address and name entered by the user.  A review of

leidel[@]aol.com ("**USER ACCOUNT AA**") revealed that **USER ACCOUNT AA** no

longer retained this email in contrast to jason.leidel[@]usuhs.edu ("**USER ACCOUNT

AO**").

      116.    On or about December 7, 2020, E██ L██ provided MINOR 1 and

MINOR 2 with two prepaid TracFone cell phones to be used to communicate with

**JASON LEIDEL**. **JASON LEIDEL** often refers to these phones as "burner phones" in

Our Family Wizard messages to E██ L██.  E██ L██ feared that if MINOR 1 and

MINOR 2 visited **JASON LEIDEL**, MINOR 1's and MINOR 2's actual cell phones

would be compromised by **JASON LEIDEL**.  The phone numbers for the phones were 757-XXX-6148 and 757-XXX-8618.

117.    On or about December 22, 2020, MINOR 1 and MINOR 2 went to stay with **JASON LEIDEL** at his shared residence with **SARAH SORG**.  MINOR 1 and MINOR 2 brought the two phones with them for the visit.  Upon returning to E█ L███s residence on or about January 3, 2021, E███ L███, MINOR 1, and MINOR 2 were unable to locate the two TracFone phones.  On January 7, 2021, the two phones were deactivated approximately 30 days after activation due to inactivity and the next month's service not being prepaid.  E██ L███ contacted **JASON LEIDEL** regarding the two phones, but **JASON LEIDEL** denied taking the phones.  E██ L███ informed MCPD that **JASON LEIDEL** had taken the two phones.  A review of Our Family Wizard communications between **JASON LEIDEL** and E███ L███ revealed that **JASON LEIDEL** was consistently hostile towards E██ L███ about the idea of "burner phones" and repeatedly asked her for the real phone numbers for MINOR 1 and MINOR 2.

118.    On January 12, 2021, **JASON LEIDEL** was interviewed by MCPD Detective Sergeant Paul Reese at the 4th District Precinct.  This was a voluntary interview and **JASON LEIDEL** was advised that the interview would be recorded.  **JASON LEIDEL** displayed printouts of emails containing threatening language he claimed to have been sent by E██ L███.  **JASON LEIDEL** alleged that the emails indicated that E██ L███ threatened to kill herself and her minor children, as well as **JASON LEIDEL**.  Detective Reese indicated that while this was the first time **JASON LEIDEL** had presented these allegations to him regarding E██ L███, he was skeptical that E██

L███ sent those emails. Additionally, Detective Reese addressed the two burner phones that MINOR 1 and MINOR 2 were unable to locate after they left the residence of **JASON LEIDEL**.  Detective Reese advised **JASON LEIDEL** that if **JASON LEIDEL** did not return to E███ L███ the two "burner phones" provided to MINOR 1 and MINOR 2 prior to their visitation with **JASON LEIDEL**, **JASON LEIDEL** would be charged with the theft of two phones.  On approximately January 13, 2021, Detective Reese charged **JASON LEIDEL** with theft, Maryland State Code CR.7.102 for the theft of two phones associated registered to phone numbers 757-XXX-6148 and 757-XXX-8618.

119.    On or about January 18, 2021, **SARAH SORG** sent an email sscontinues[@]gmail.com ("**USER ACCOUNT BB**") to leidel[@]aol.com ("**USER ACCOUNT AA**")**,** which was also addressed to sarahesorg[@]gmail.com ("**USER ACCOUNT BA**") with the email subject as "Narrative".  The text in the body of the email was nearly identical to what would become **JASON LEIDEL** and **SARAH SORG**'s joint MCPD Internal Affairs Division complaint ("MCPD IAD Complaint") against Detective Paul Reese.

120.    On or about January 20, 2021, **JASON LEIDEL** provided MCPD Captain Marc Yamada with a jointly signed MCPD IAD Complaint against Detective Reese and other MCPD police officers who were involved in the August 4, 2020 search of **JASON LEIDEL's** and **SARAH SORG**'s residence.  **JASON LEIDEL** and **SARAH SORG** stated in paragraph 49 of the MCPD IAD Complaint, "[b]y having these peace and protective orders granted against E███ L███, E███ L███ has been adjudged by four different Montgomery County judges on six separate occasions that it was more likely

than not that E██ L██ was the author of the disturbing letter that SARAH SORG

received. Despite what may be Reese's possible obstruction of the extortion letter

investigation, these decisions show that Sarah Sorg and Jason Leidel had 'probable

cause' to believe E██ L██ sent the letter."

121.    Based on information provided to me by a Montgomery County Assistant

States Attorney, and verified with Maryland Case Search, I believe that **JASON**

**LEIDEL** and **SARAH SORG** were referring to the following judges and cases:

    a.  September 21, 2020 – Judge Oliver in Montgomery County District Court
       – cases 0601SP052002020 and 0601SP047992020

    b.  September 28, 2020 – Judge Moffett in Montgomery County District
       Court – cases 0601SP052002020 and 0601SP047992020

    c.  November 13, 2020 – Judge McAuliffe in Montgomery County Circuit
       Court – case 171496FL

    d.  November 16, 2020 – Judge Boynton in Montgomery County Circuit
       Court – case 10173D

122.    As discussed earlier in paragraph 95, E██ L██ was unable to attend the

September 28, 2020 hearing with Judge Moffett because E██ L██ was jailed for

approximately four days in Virginia Beach, VA as a result of the charges filed by

**SARAH SORG** at the Montgomery County District Commissioner's Office.  A default

judgement was granted in favor of **JASON LEIDEL**.

123.    Based upon my training and experience, as well as the relevant facts of the

case and documents submitted by **JASON LEIDEL** and **SARAH SORG** to relevant

authorities, I believe that **JASON LEIDEL** not only attempted to defraud the Virginia

Beach JDRC as previously mentioned, but also engaged in a pattern of conduct to

mislead the Montgomery County Circuit Court by making repeated false allegations

about E███ L███.

124.   On approximately January 23, 2021, **JASON LEIDEL**'s email account

leidel[@]aol.com ("**USER ACCOUNT AA**") appeared to receive an email as a blind

carbon copy from sassanach███[@███.com ("**USER ACCOUNT DB**"), an email

account associated with E███ L███. The email stated the following:

> I am so scared. I am being intimidated by the police. If I dont [sic] do what they
> say then I am going back to prison. I need help. I have done very bad things. I
> have lied to save myself and to get others in trouble. I am looking to make a deal.
> If not I will take my kids with me. Help me save myself and my kids. I wont [sic]
> take being forced to make up lies to help you're officers make there cases. I cant
> [sic] live with myself. Save me and my kids. Tomorrow will be to [sic] late.
> This is my cry for help.


[E███ L███]
████████ Drive
Va beach, va

125.   Based on a review of leidel[@]aol.com ("**USER ACCOUNT AA**") and

email header analysis[10] of this specific email, pursuant to a MCPD search warrant of

**USER ACCOUNT AA**, it was determined that this email did not originate from

sassanach████████.com ("**USER ACCOUNT DB**").  The email header contained

information indicating that the email had not passed SPF, DKIM or DMARC

verifications.  Also, the "Received From" IP address 93.99.104[.]210 resolved to the

---

[10] Email header analysis includes but is not limited a review of "fields" such as:
- Received from IP address
- SPF - Specifies the servers and domains that are authorized to send email on behalf of your organization
- DKIM - Adds a digital signature to every outgoing message, which lets receiving servers verify the message actually came from your organization
- DMARC - Lets you tell receiving servers what to do with outgoing messages from your organization that don't pass SPF or DKIM

domain "emkei[.]cz" in January 2021.  The domain "emkei[.]cz"[11] is known as Emkei's

Fake Mailer[12].  Furthermore, during the protective order extension hearing against E███

L███ on November 12, 2021, Judge Jeanie Cho requested **JASON LEIDEL** to provide

another sample email he received from E███ L███l for comparison purposes.  **JASON**

**LEIDEL** advised Judge Jeanie Cho that he was not able to provide another example for

comparison.

126.    On approximately January 29, 2021, Maggie Friess of the Montgomery

County State's Attorney's Office received an email from leidel[@]aol.com ("**USER**

**ACCOUNT AA**"), claiming that **JASON LEIDEL** received harassing and threatening

emails from E███ L███ in violation of a protective order.

127.    On approximately February 6, 2021, **JASON LEIDEL**'s email account

leidel[@]aol.com ("**USER ACCOUNT AA**") appeared to receive an email from

smokymountain█████████.com ("**USER ACCOUNT DD**") an email account

associated with E███ L███, with the following content:

> Jason Leidel
>
> I fucking hate you. You should just kill yourself now asshole.  If you our [sic] to
> [sic] pussy then I will kill you myself. I will use [M███ S██████'s] guns or my
> ghost guns.  8 in clip and one in the whole.  That leafs [sic] me with enough to kill
> the kids to.  I hate you.
>
> Watch your back bitch
>
> 

---

[11] Based on open source information, IP address 93.99.104[.]210 resolved to the domain
"emkei[.]cz" until April 2021.  "emkei[.]cz" is the domain for Emkei's Fake Mailer.

[12] Emkei's Fake Mailer is a website that, free of charge, allows a user to send an email,
including with attachments, to any recipient, in which the email appears as though it
originates from any email address and name entered by the user

128.     Based upon a review of leidel[@]aol.com ("**USER ACCOUNT AA**") and email header analysis of this specific email, pursuant to a MCPD search warrant of **USER ACCOUNT AA,** it was determined that this email did not originate from risingridge ████████.com ("**USER ACCOUNT DC**"), but rather from Emkei's Fake Mailer.

129.     On or about February 16, 2021, **JASON LEIDEL**'s email account leidel[@]aol.com ("**USER ACCOUNT AA**") appeared to receive an email from sassanach██ [@]███.com ("**USER ACCOUNT DB**"), an email account associated with E██ L███, with the following content:

> Jason Leidel,
>
> I fucking hate you. I will take [M████ S█████'s] guns and murder you myself. I keep planning everything down to the last detail and you still keep beating my traps. I hope you die a slow and painful death. Come at me bitch. Think I will not kill my girls before killing my self [sic]? You'll get your wish. We will be a family again all burning in fucking hell.
>
> E██ L███ 

130.     Based upon a review of leidel[@]aol.com ("**USER ACCOUNT AA**") and email header analysis of this specific email, pursuant to a MCPD search warrant of **USER ACCOUNT AA**, it was determined that this email likewise did not actually originate from sassanach██ [@]███.com ("**USER ACCOUNT DB**"), but rather from Emkei's Fake Mailer.

131.     Based on information provided by MCPD from E██ L███, review of search warrant returns related to E██ L███'s email accounts, as well as additional analysis from MCPD Electronic Crimes Unit, it is believed that E██ L███ did not send these emails and that the aforementioned emails originated from Emkei's Fake Mailer.

## HARASSMENT OF LAW ENFORCEMENT OFFICERS AFTER CRIMINAL CHARGES

132.    On or about March 9, 2021, MCPD Detective Sergeant Paul Reese charged **JASON LEIDEL** with CR 9-501 "False Statement to Police Officer".  MCPD Detective Sergeant Paul Reese believed that **JASON LEIDEL** sent the aforementioned spoofed emails on January 23, 2021, February 6, 2021, and February 16, 2021 to himself in order to bring criminal charges against E█████ L████ by making false statements to the Montgomery County State's Attorney's Office and the Montgomery County Police Department.

133.    On approximately March 11, 2021, MCPD Detective Sergeant Paul Reese started receiving text messages from phone numbers 240-XXX-7285 and 301-XXX-7849.  Text messages from 240-XXX-7285 stated, "I here you r a shit talker. Come to my hood, Nigga." Text messages from 301-XXX-7849 stated, "Nah nigga.  Is dis Paul? I'm trying to get fuck up. I heard you got dat good shit.  Free base… I love the fake voice. I am with your mom. Wanna call me dad-dy? You piece of shit… I am in your dead mom's ass. I bet she died a terrible death."

134.    According to database queries and open source research, phone number 301-XXX-7849 was assigned to Pinger/TextFree on March 11, 2021.

135.    According to records provided by Pinger/TextFree, the subscriber for phone number 301-XXX-7849 created the account on or about March 11, 2021, from IP address 73.129.168.155.

136.    Records provided by Comcast revealed that IP address 73.129.168.155 was assigned to the Montgomery County, Maryland residence of W████ C███, a close friend of **JASON LEIDEL**.  W████ C███ was interviewed by FBI and MCPD

investigators on December 15, 2021, and he advised that **JASON LEIDEL** was a frequent guest at his residence.

137.    According to records provided by TextNow, the subscriber for phone number 240-XXX-7285 registered the TextNow account using email address █ █ s █████ [@] █████ .com ("**USER ACCOUNT AM**") and, similar to the Pinger/TextFree account referenced in the above paragraph, was created from the IP address 73.129.168.155 on March 11, 2021.  Pursuant to both an MCPD and FBI search warrant for **USER ACCOUNT AM** revealed that **USER ACCOUNT AM** received emails from TextNow confirming registration for phone number 240-XXX-7285 as well as emails between another fraudulent and spoofed account belonging to **JASON LEIDEL** such as smokymountain███ [@ █████ .com ("**USER ACCOUNT DD**").

138.    Based on records provided by Google for e██ f █ s █████ [@]g███ .com ("**USER ACCOUNT AM**"), I believe that **JASON LEIDEL** created **USER ACCOUNT AM** on March 3, 2021 using E███ L███ 's date of birth.

139.    In addition to **JASON LEIDEL** being a frequent guest of W███ C███ , **SARAH SORG**'s email account sarahesorg[@]yahoo.com ("**USER ACCOUNT BC**") was logged in from the IP address assigned to C███ 's home, according to records provided by Yahoo, Inc.  **SARAH SORG**'s email account sarahesorg[@]yahoo.com ("**USER ACCOUNT BC**") was logged in from W███ C███ 's residence on March 22, 2021, March 25, 2021, and April 8, 2021.  **USER ACCOUNT BC** was not observed to have logged in from IP address 73.129.168.155 since April 8, 2021.  Yahoo, Inc. was unable to provide login records for **USER ACCOUNT BC** earlier than March 22, 2021.

140.     Between approximately 7:00pm and 8:00pm on March 28, 2021, **JASON LEIDEL** was logged into both leidel[@]aol.com ("**USER ACCOUNT AA**") and his Discover credit card online account from C███'s home IP address.  Prior to that, according to Google records, jason.leidel[@]gmail.com ("**USER ACCOUNT AC**") was also logged in from that same IP address on or about February 24, 2021.  Furthermore, subscriber information for **USER ACCOUNT AC** listed **USER ACCOUNT AA** as its recovery email address along with **JASON LEIDEL**'s cell phone number (252-XXX-2915) as its recovery phone number, which I submit indicates that **JASON LEIDEL** was the account owner of jason.leidel[@]gmail.com ("**USER ACCOUNT AC**").  Records from Google state that **USER ACCOUNT AC** utilized the following services: Gmail, Google Photos, Google Hangouts, Android, Google Calendar, Google Play, YouTube, Location History, Google Drive, Google My Maps, and Google Voice.  Based on my training and experience, including the fact that **USER ACCOUNT AC**, an account known to be used by **JASON LEIDEL**, used an Android service [, and that no Android devices were recovered during the search of **JASON LEIDEL**'s residence], I believe the aforementioned Google services indicate that **JASON LEIDEL** has previously utilized an undisclosed Android device and that Android device remains in **JASON LEIDEL**'s possession.

### IMPERSONATION OF LAW ENFORCEMENT OFFICERS

141.     On August 24, 2021, MCPD Detective Reese's email account paul.reese[@]montgomerycountymd.gov purportedly sent the following email to the MCPD Chief of Police Marcus Jones and the Montgomery County Council:

Marcus,

Are [sic] line of work is not the same.  Are [sic] every move is watched and recorded.  A racist comment or a fag joke is now insensitive.  How many times did we enhance the facts to put scumbags behind bars?  We were taught to trust are [sic] gut.  Now we have to investigate first explain are evidence than file charges.  I didnt [sic] sign up for this.  I made Sargant [sic] by getting these illegals off the street and than creating enough evidence to these beaners to admit to a few unsolved mysteries.  My ex-wife is being a cunt.  Ill [sic] take my pension and go live a plantation owner in one of these beaners places.  I hope you will attend my retirement.  I told HR that I wanted to get officially retired by the end of September.

Buck

142.     A review of the aforementioned email file provided by Montgomery County and email header analysis conducted by your Affiant, revealed that this email did not originate from Detective Reese's email account but rather from Emkei's Fake Mailer. This was the same technique as discussed in the "SPOOFED EMAILS" section of this Affidavit (paragraph 114) that **JASON LEIDEL** submitted to the Montgomery County Circuit Court that were purportedly sent by E███ L███.

143.     On September 10, 2021, MCPD Detective Sergeant Paul Reese's email account paul.reese[@]montgomerycountymd.gov purportedly sent the following email to Montgomery County State's Attorney's Assistant State Attorney Karen Mooney and E███ L███'s Navy email account e███.███[@]navy.mil which uses MCPD Detective Paul Reese's email signature block and makes references to the fabrication of criminal charges:

,

I dont [sic] know what games you are playing. You need to call Ms. Mooney immediately.  I have stuck my neck out for you.  I protected you when you admitted to me that your BF had guns.  I worked very closely with your attorney to punish your ex. I lied to NCIS and when that didnt [sic] work I left out alot [sic] of information to get him charged.  Karen is one of us.  She will take care of you.  The FBI is poking around into my case files.  If they discover that I intentionally fabricated the charges for you then I am going down.  If I go down

then so will you. Karen knows the emails that you sent and about your kid's phones being located in Virginia. You admitted to sending all of these emails. I have immunity. I have you recorded admitting to fabricating these charges. Fix this or else Ms. Mooney will use the entire weight of her office to charge you with alot [sic] of charges. You're [sic] worst fear will come true. You're [sic] asshole baby daddy will have your kids and you will be back in jail. Kill them or don't [sic]. I am not going down for you.

Paul

Detective Sgt. Paul Reese
Wheaton Investigative Section
Montgomery County Police Department
Wheaton, MD 20902
Cell: 240-xxx-xxxx
Desk: 240-xxx-xxxx

144.    A review of the aforementioned email file provided by Montgomery

County and email header analysis conducted by your Affiant revealed that this email did

not originate from Detective Reese's email account but rather from Emkei's Fake Mailer.

MCPD Detective Sergeant Paul Reese has denied sending the emails referenced above.

### CONTINUED EMAIL SPOOFING

145.    On or about April 19, 2021, Judge Tanya Bullock of the Virginia Beach

Juvenile and Domestic Relations Court received an email from

e____f__s_____n[@]o____.com ("**USER ACCOUNT AL**") with what appears to be a

forwarded email from E___ L___ alleging that E___ L___ was being harassed by

VBPD, and VBPD promising to protect E___ L___ even if E___ L___ lied:



From: E___ F___
Sent: Monday, April 19, 2021 4:49 PM
To: BCICID@vsp.virginia.gov <BCICID@vsp.virginia.gov>;
firearms@vsp.virginia.gov <firearms@vsp.virginia.gov>;
t_____l____@navy.mil <b_____.r____@navy.mil>; c_____@navy.mil
<d_____@navy.mil>
Cc: t_____@vacouts.gov <_____@vacouts.gov>
Subject: 2nd Amendment

I am getting harassed by the Virginia Beach police department. they promised to protect me if I lied. I am now being told that my finance [sic] has to get rid of his large weapons cache or I have to move because I have a protective order against me. that's ridiculous. the [S]econd [A]mendment protects his guns. my ghost guns are untraceable. Do you no [sic] what I had to do to get him to buy me our house? I did things I swore I would never do.

I wasn't going to really kill all those people. I just wanted to scare them into giving me everything that I want. I have threatened to kill myself and my kids several times. I use a VPN and deny writing it. no one cares.

I am afraid that I will be forced into a mental institution. I will not be ordered to take pills. I have copied the judge for you to tell her yourself that she cant [sic] make me do anything. I am a member of a group that does not submit to the governments [sic] authority.



Virginia beach, va
2598

The message purportedly claimed that E█████ L███ was using a virtual private network (VPN) service, an online service used to anonymize an individual's internet traffic in order to prevent identification. A forensic analysis of an iPhone 6S believed to belong to **JASON LEIDEL,** that had been seized from **JASON LEIDEL** and **SARAH SORG**'s residence, revealed that **JASON LEIDEL** used TorGuard, a fee based VPN service, on his iPhone 6S. Additionally, **JASON LEIDEL**'s username for his TorGuard VPN service was "e███ l████". The investigation has showed that **JASON LEIDEL,** and not E███ L███l, exhibits VPN use for both online accounts he purports to be E███ L████s online accounts, and his own overt online accounts.

146.    On April 20, 2021, Virginia Beach Juvenile and Domestic Relations Court informed E███ L████'s attorney of the aforementioned email. Her attorney advised the court that E███ L███ did not send that email. On April 22, 2021, the account owner of e███ l s████████ [@█████.com ("**USER ACCOUNT AL**") attempted to advise E█████

L████'s attorney via email that this was E███ L███'s new email address.  On January 8, 2022, E███ L███'s attorney reconfirmed to your Affiant that **USER ACCOUNT AL** did not belong to E███ L███.

147.    On or about July 23, 2021, **SARAH SORG,** using her work email account sarah.sorg[@]dot.gov ("**USER ACCOUNT BE**"), emailed S████ H██████, an ethics advisor to the USDOT, to inform S████ H██████ that she wanted to file a Notice of Claim against Montgomery County regarding the search warrant of her residence on August 4, 2020, and to determine if there were any ethical concerns with her doing so, given her position with DOT.  **SARAH SORG** stated that "I plan on doing it *pro se* in my personal capacity, on my own time using my own resources etc."   However, search and review of emails in leidel[@]aol.com ("**USER ACCOUNT AA**") and the correspondence between **JASON LEIDEL** and **SARAH SORG**, shows that the various documents drafted by **SARAH SORG** were produced using a DOT computer and DOT-licensed computer software, contrary to **SARAH SORG**'s statement to S███ H██████.  Furthermore, a USDOT review of **SARAH SORG**'s user account sarah.sorg[@]dot.gov ("**USER ACCOUNT BE**") revealed that **SARAH SORG** selectively deleted nearly all emails with S████ H██████ regarding **JASON LEIDEL**.

### TAMPERING WITH DOD SYSETEMS AND RECORDS

148.    By the end of July 2021, **JASON LEIDEL** had transferred from USUHS back to the USN's Bureau of Medicine in Falls Church, VA.  Before transferring, **JASON LEIDEL** returned the USUHS laptop he had been provided.   USUHS agreed to surrender the USUHS laptop to the FBI as evidence.  While preparing to transfer the

USUHS laptop to the FBI's custody, USUHS determined that an unauthorized operating system was installed on the USUHS laptop and BitLocker encryption, a native Microsoft Windows hard drive encryption utility, was enabled.  The operating system installed on the laptop was different than the approved USUHS Windows operating system:



149.    The boot up screens indicated the username for login was "e█ l█," and the associated login email was leidel[@]aol.com ("**USER ACCOUNT AA**)**,** **JASON LEIDEL**'s personal email address.  USUHS demonstrated how a computer with the authorized USUHS Windows operating system should appear during boot up:



150.    The forensic analysis of **JASON LEIDEL**'s iPhone 6S seized from

**JASON LEIDEL** and **SARAH SORG**'s residence, enabled your Affiant to identify

PINs/passcodes that **JASON LEIDEL** commonly used for other mobile based services.

Your Affiant was able to successful log into the operating system of the USUHS laptop

using passcode "█13" which was **JASON LEIDEL**'s PIN for his United States

Automobile Association (USAA) mobile application commonly used on cell phones.

151.    Based on the investigation, I believe that **JASON LEIDEL** intentionally

wiped the system and installed an unauthorized operating system on the USUHS laptop,

so he could use the laptop to attribute the computer's activity to E██ L██ and/or

conceal his previous criminal activity from USUHS and law enforcement agencies.

**CONTINUED HARASSMENT AFTER SEPARATION**



152.    On August 30, 2021, PTA members of the ███████ Elementary School as well as various Navy civilians received an email from T███████PTAconcernedneighbour[@]outlook.com stating:

> Subject: [B███ L███] did any of y'all do a background check?
> Reply-To: T███████PTAconcernedneighbour@outlook.com
>
> How are you going to allow someone who has been convicted of domestic violence to be a member of your organization? A quick google search lead me to Maryland's legal case search. The case number was 171496FL. The court case listing mentioned that [B███ L███] has illegal firearms possession.
>
> In the Commonwealth of Maryland a protective order is issued for any of these= https://mdcourts.gov/sites/default/files/court-forms/courtforms/joint/ccdcdvpo001br.pdf/ccdcdvpo001br.pdf
>
> an act that caused serious bodily harm• an act that placed the petitioner in fear of imminent harm• assault in any degree• rape or sexual offense• attempted rape or sexual offense• false imprisonment• criminal stalking• revenge porn*
>
> [B███ L███] was arrested on 9/25/20 for felony extortion. https://www.jailbase.com/arrested/virginia/virginia-beach/[B███ L███]-20461753311265
>
> Is this the person that we want around children, including ████████ children? I am glad that my children are not at ████████ anymore. I found this information in about 20 minutes. Shame on all of you for not doing your due diligence.
>
> Concerned T███████ neighbor

153.    The email referenced case number 171496FL which was a Montgomery County domestic violence case involving **JASON LEIDEL** and B███ L███. Your Affiant conducted email header analysis of this email and determined that it was sent via Emkei's Fake Mailer. When an email is sent via Emkei's Fake Mailer, a reply by any of the recipients is unable to be received by the sender unless the sender is the account owner of the actual account associated with that email address. Furthermore, the "Concerned T███████ neighbor" signature block bears similarity to the purported

account owner of michaeljonrs[@]mail.com ("**USER ACCOUNT AN**"), "Michael Z.

Jones", a self-described whistleblower and another "concerned taxpayer", who made

allegations against M███ S█████'s handling of information for official use only as a

security violation referenced in paragraph 43.

154.    A day later on August 31, 2021, the recipients of the suspected, spoofed

email from T██████PTAconcernedneighbour[@]outlook.com received an email

containing the identical text from T█████PTAconcernedneighbour[@]protonmail.com

("**USER ACCOUNT AP**").  Protonmail is a Switzerland based email hosting service that

advertises its data security and privacy and end to end encrypted communication.  One of

the recipients to this email replied to the sender and received a response from the account

owner of **USER ACCOUNT AP**.  Based on information provided by the Federal Office

of Police, a criminal investigative branch of Switzerland's Federal Criminal Police,

**USER ACCOUNT AP** was established on August 27, 2021.  Based upon my training

and experience, I believe that the account owner of **USER ACCOUNT AP** was the

original sender of the email purportedly sent from

T██████PTAconcernedneighbour[@]outlook.com using Emkei's Fake Mailer on

August 30, 2021 and created T██████PTAconcernedneighbour[@]protonmail.com

("**USER ACCOUNT AP**") in order to receive replies from the original recipients of both

emails.

155.    **JASON LEIDEL**'s former attorney, A██r W█████, sent emails to

Montgomery County Assistant States Attorney ("ASA") Karen Mooney with attachments

that contained exchanges between S████ D████, Esq.,[13] another former attorney for

---

13 S███ D████ was one of the various attorneys retained by **JASON LEIDEL** but no longer represents

**JASON LEIDEL**, and **JASON LEIDEL's** email account

jasonmleidel[@]protonmail.com ("**USER ACCOUNT AQ**").  Swiss authorities provided

information that showed jasonmleidel[@]protonmail.com ("**USER ACCOUNT AQ**")

was established on approximately June 2, 2021.   Based on my training and experience, I

know that Protonmail is viewed as a "bullet proof" email hosting service from which

content is not likely to be recovered by law enforcement with a search warrant.  Based on

the registration date and use of jasonmleidel[@]protonmail.com ("**USER ACCOUNT**

**AQ**")**, JASON LEIDEL** was aware of the Protonmail service as early as June 2, 2021,

and I believe that **JASON LEIDEL** created

T████PTAconcernedneighbour[@]protonmail.com ("**USER ACCOUNT AP**") to

target E██ L██

### CONTINUED FALSE STATEMENTS AND ALLEGATIONS TO THE COURT

156.    On approximately October 26, 2021, **JASON LEIDEL** filed a motion to

extend the protective order against E██ L██ to include MINOR 1 and MINOR 2, in

Montgomery County, Case Number 171496FL, and to hold E██ L██ in contempt for

violating the existing protective order.  **JASON LEIDEL** accused E██ L██ of

"threatening to kill the petitioner and our two minor children via several emails.  The

Respondent was previously adjudicated to have sent a threatening letter in the mail where

E██ L██made claims of practicing her shooting at a military gun range …."

157.    On November 5, 2021, MCPD Detective Christopher Massari filed

criminal charges against **JASON LEIDEL** for making false statements to a state official

him based on information provided by the Montgomery County State's Attorney's Office. S████ D████
previously represented **SARAH SORG** in her divorce against her ex-husband from approximately May
2018 to March 2019 for Montgomery County Circuit Court Case Number 153235FL.

with regard to **JASON LEIDEL**'s court filing on October 26, 2021.  **JASON LEIDEL**
was previously advised by MCPD and the Montgomery County State's Attorney's Office
based on the MCPD Electronic Crimes Unit's email analysis that E███ L███ did not
send the specified emails.   The case was assigned Maryland District Court Number D-
06-CR-21-000057.

158.    On November 12, 2021, a court hearing for Montgomery County Case
Number 171496FL was held regarding the extension of a protective order and contempt
of an existing protective order.  **JASON LEIDEL** was advised by Judge Jeannie Cho that
his criminal charges were related to his filing before the court and that by choosing to
continue he may be cross-examined.  Judge Jeannie Cho further advised **JASON
LEIDEL** that the statements he made could be used against him in a criminal
prosecution.  **JASON LEIDEL** understood that he would be waiving his Fifth
Amendment rights by choosing to continue with his motion.  **JASON LEIDEL** was
subsequently cross-examined by E███ L███'s attorney.  Judge Jeannie Cho stated that
she found **JASON LEIDEL**'s testimony and **JASON LEIDEL** to not be credible.  As a
result of her concerns with **JASON LEIDEL**'s credibility, Judge Jeannie Cho denied
both the motions to grant an extension and to hold E███ L███ in contempt of the
existing protective order.

159.    On November 26, 2021, **SARAH SORG** witnessed FBI Special Agents
Kevin Kuo and David Paniwozik serve **JASON LEIDEL** a target letter from the United
States Attorney's Office of the District of Maryland at **SARAH SORG**'s residence.
**JASON LEIDEL** was informed that he was the target of a federal criminal investigation
for cyberstalking.

160.     A review of records provided by Yahoo Inc., revealed that **SARAH SORG**'s home IP address was 108.18.192[.]73, which was also associated to Yahoo email account, sscontinues[@]yahoo.com ("**USER ACCOUNT BD**").  **USER ACCOUNT BD** was registered on August 9, 2020, approximately five days after MCPD and VBPD executed a residential search warrant on **JASON LEIDEL** and **SARAH SORG**'s residence, and while **JASON LEIDEL** was held in a Montgomery County jail. Account information provided by Yahoo Inc. indicates that **SARAH SORG**'s date of birth, Xxxxxxxxx, XX, 1979 was listed for the account as well as a verified recovery phone number +1XXXXXX4114 which is **SARAH SORG**'s cell phone number.  The forensic analysis of **SARAH SORG**'s DOT work laptop, which was collected in February 2022, revealed "sscontinues" was cached in the Chrome web browser "Autofill" feature and last used on September 23, 2020, approximately two days prior to E████ L████'s arrest.  Modern web browsers such as Chrome allow a user to fill out web forms with user saved info such as a user name, password, address, or payment information. Based on my training and experience, I submit that **SARAH SORG** is the account owner **USER ACCOUNT BD**.

### DELETION OF RELEVANT DATA ON GOVERNMENT SYSTEMS

161.     On or about January 27, 2022, Montgomery County ASA Mooney advised investigators that **JASON LEIDEL**'s attorney, Isabelle Raquin, had been provided discovery for **JASON LEIDEL**'s pending criminal trial.  In the discovery production, **JASON LEIDEL** received emails MCPD obtained from his USUHS email account, including the "Test" email sent from Emkei's Fake Mailer to leidel[@]aol.com ("**USER ACCOUNT AA**") and jason.leidel[@]usuhs.edu ("**USER ACCOUNT AO**").  This

"Test" email preceded the other spoofed emails **JASON LEIDEL** is believed to have sent from Emkei's Fake Mailer on January 23, 2021, February 6, 2021, and February 16, 2021.

162.     Also subsequent to the production of **JASON LEIDEL**'s USUHS email account for the Montgomery County criminal case discovery and based on a review of **SARAH SORG's** DOT user account by DOT OIG Special Agent Daniel Irving, **SARAH SORG** deleted a significant quantity of electronic artifacts relevant to **JASON LEIDEL** in **SARAH SORG**'s DOT user account such as emails, Outlook calendar appointments and meetings, as well as other files of personal and family nature.  Prior to this, **SARAH SORG** used her USDOT computer and account to track **JASON LEIDEL's** court hearings as Outlook calendar appointments.  Based on my training and experience as well as **SARAH SORG**'s involvement in **JASON LEIDEL's** criminal activity and cases, I believe **SARAH SORG** started to sanitize her DOT user account soon after discovering Montgomery County Police Department had also obtained content **JASON LEIDEL**'s DOD USUHS user account.

163.     On or about June 17, 2022, VBPD Detective Chelsea Lindemeyer observed **SARAH SORG** in attendance for a JDRC hearing in Virginia Beach regarding child custody matters between **JASON LEIDEL** and E█████ L███.  **SARAH SORG** was observed taking notes and visibly upset when Judge Shockley denied the reinstatement of unsupervised child visitation for **JASON LEIDEL.**  Judge Shockley denied the reinstatement because **JASON LEIDEL** was the target of a federal criminal investigation and his criminal matters have not yet been resolved.  Based on the investigation, this was

the first time **SARAH SORG** appeared in court proceeding involving **JASON LEIDEL**

despite her presence not being required.

## FABRICATION OF EXCULPATORY EVIDENCE

164.    On March 6, 2022, E███ L███ informed the FBI that she believed her

Our Family Wizard account had been compromised by **JASON LEIDEL**.  E███ L███

provided the FBI with the password for her account and the message purportedly sent

from her account to **JASON LEIDEL** on March 2, 2022:

> Their was no admission to [the Children's Hospital of The King's Daughters]. I
> told the school that so [MINOR 2] might not get expelled.
> I'm not going to tell you any more then my advisors make me. I will keep
> spoofing emails to get you arrested. I've told the Police the truth. At this point,
> they hate you so much. They might even hate you more than I do.
> "acknowledged" Fuck you.
> call the school yourself, bitch

165.    E███ L███ claimed that this message was not only sent from her Our

Family Wizard account, but it appeared to have been deleted from her "Sent" folder and

she only noticed it in her "Archive" folder for her Our Family Wizard account.  Based on

my training and experience, I believe that when cyber criminals compromise a victim's

email account to send fraudulent messages, they frequently delete sent messages to delay

or prevent the victim from realizing that a fraudulent messages was sent from the

account.

166.    A review of records provided by Our Family Wizard and a review of

**JASON LEIDEL**'s Our Family Wizard account, revealed that **JASON LEIDEL**'s Our

Family Wizard account was accessed from various IP addresses resolving to M247 LTD,

an Internet hosting provider for VPN providers, on May 11, 2020, May 23, 2020, and

December 29, 2021:

| Date | Time | IP Address | Internet Service Provider |
|------|------|-----------|---------------------------|
| 12/29/2021 | 16:59 | 45.87.214.107 | M247 Ltd |
| 5/23/2020 | 12:14 | 104.243.212.130 | M247 Ltd |
| 5/23/2020 | 12:04 | 104.243.212.130 | M247 Ltd |
| 5/11/2020 | 1:32 | 104.243.212.81 | M247 Ltd |

167.    A review of records provided by Our Family Wizard and a comparison of account access activity between **JASON LEIDEL** and E██ L███'s Our Family Wizard account, lead me to believe that **JASON LEIDEL** accessed E██ L██'s Our Family Wizard account on at least three occasions.  On February 14, 2022, February 20, 2022, and March 2, 2022, E███ L███'s Our Family Wizard accounts were access from various IP addresses resolving to M247 LTD.  Based on my training and experience, cyber criminals often perform reconnaissance on a victim's account prior to engaging in more noticeable activity such as sending fraudulent messages as in the message sent on March 2, 2022 (*see* paragraphs 163-166, *above*):

| Date | Time | IP Address | Internet Service Provider |
|------|------|-----------|---------------------------|
| 3/2/2022 | 22:55 | 193.148.18.62 | M247 Ltd |
| 2/20/2022 | 12:12 | 45.87.214.109 | M247 Ltd |
| 2/14/2022 | 9:54 | 193.148.18.78 | M247 Ltd |

168.    E██ L███ did not change her password from "E███203" which was a shared family password during **JASON LEIDEL** and E██ L███'s marriage,.  In fact, based on a forensic review and advanced data recovery of an iPhone 6S seized from **JASON LEIDEL** and **SARAH SORG**'s residence on August 4, 2020, your Affiant believes that this password was also used by **JASON LEIDEL** for his PEPCO online account in December 2019.

169.    Based on a review of both **JASON LEIDEL** and E██ L███'s Our Family Wizards account activity and the use of a common password, I believe that

**JASON LEIDEL** accessed E██ L████'s Our Family Wizard account in order to send a fraudulent message that would be exculpatory evidence for his criminal trial in Montgomery County.

170.    On or about July 22, 2022, Isabelle Raquin, **JASON LEIDEL**'s attorney for his state criminal matters advised the Montgomery County State's Attorney's Office that she would be requested a material witness from Our Family Wizard for **JASON LEIDEL**'s allegation that E██ L████ will continue spoofing emails.  In Isabelle Raquin's communication with the Montgomery County State's Attorney's Office, she provides correspondence between her and **JASON LEIDEL** which indicates **JASON LEIDEL**'s intention to use fabricated evidence for his defense:

> From: Jason Leidel <leidel@aol.com>
> Sent: Wednesday, March 9, 2022 6:12:23 PM
> To: Isabelle Raquin <Isabelle@raquinmercer.com>
> Subject: Please read
>
> Good Evening, Isabelle,
>
> E███ and I communicate through a court ordered website/app called Our Family Wizard [OFW].  OFW keeps track of login activity, IP addresses, when messages are sent and first viewed, etc.  E███ has NEVER claimed that any of these messages were "spoofed."
>
> About 40 minutes ago, at 1727, I read an OFW message that E███ sent me on 2 March 2022 at 2307.  This OFW message is alarming.  She writes "I will keep spoofing emails to get you arrested."
>
> I have enclosed a pdf of E███'s login activity.  Her login activity does NOT have her IP addresses.  However, my enclosed login activity does contain my IP addresses.  Please note that E███'s had login activity around the time [ 03/02/2022 10:55 PM] that this message was sent.
>
> My last two log ins were:
> 03/02/2022 8:41 PM and 03/09/2022 5:27 PM
>
> I just found out that my oldest child has been placed in an in-patient mental treatment facility and this is the message that I read.

Humbly,

Jason Leidel

████-2915

Contrary to **JASON LEIDEL's** asserted that E███ L███ never claimed she did not send

the Our Family Wizard message, E███ L███ reported this incident to investigators on

March 6, 2022.

## REVERSE PROFFER

171.    On August 25, 2022, your Affiant, AUSA Michael Cunningham, and

AUSA Thomas Sullivan conducted an attorney-only reverse proffer with Ellie C.

Marranzini of the Office of the Federal Public Defender who represents **JASON**

**LEIDEL** for his federal matters.  The United States Attorney's Office District of

Maryland requested **JASON LEIDEL** show intent to seek a pre-indictment resolution

through the Office of the Federal Public Defender by Thursday September 8, 2022.

172.    On Wednesday September 7, 2022, your Affiant conducted physical

surveillance in the vicinity of 2893 Schoolhouse Circle and observed a car concealed by a

car cover bearing the same shape as **JASON LEIDEL**'s red Toyota Prius in front of

**JASON LEIDEL** and **SARAH SORG**'s residence.  Follow up database queries

indicated that **JASON LEIDEL** and **SARAH SORG** traveled into Canada on September

3, 2022.  Database queries also indicated that **JASON LEIDEL** and **SARAH SORG** do

not travel internationally frequently.  In fact, **JASON LEIDEL**'s last traveled to Canada

in April 2018 and **SARAH SORG** last traveled internationally in August 2019.

173.    On Thursday September 8, 2022, AUSA Michael Cunningham and AUSA

Thomas Sullivan received an email from Ellie C. Marranzini containing a copy of the

fabricated exculpatory evidence which was purported communications from E█ L█

as explained starting from paragraph 164.  Based on this, I believe that **JASON LEIDEL**

does not seek to obtain a pre-indictment resolution and **JASON LEIDEL** and **SARAH**

**SORG** traveled to Canada in anticipation of law enforcement action.  I believe **JASON**

**LEIDEL** intended to temporarily evade law enforcement action at his residence

immediately after September 8, 2022.

174.    On or about September 22, 2022, NCIS Special Agent Richard Holcomb

informed your Affiant that **JASON LEIDEL** tested positive for marijuana use during a

random urinalysis and that the Navy would begin the process to separate **JASON**

**LEIDEL**.

## THE TARGET LOCATIONS

175.    As further described below, interaction with local and federal law

enforcement agencies as well as physical surveillance indicate that **JASON LEIDEL** has

been associated with the **TARGET PREMISES** from at least August 4, 2018 through

May 26, 2022:

a.    On August 4, 2020, MCPD and VBPD executed a residential

search warrant on the **TARGET PREMISES** and seized items belonging to **JASON**

**LEIDEL** and **SARAH SORG**.

b.    On November 24, 2021, your Affiant served **JASON LEIDEL** a

Target Letter from the United States Attorney's Office District of Maryland at the

**TARGET PREMISES**.

c.    On May 26, 2022, during physical surveillance of the **TARGET**

**PREMISES**, DOT agents observed a red Toyota Prius with Maryland license plate

8DN7886 which is registered to **JASON LEIDEL** parked in front of the **TARGET PREMISES**.

176.     Based on my training and experience, I know that individuals who engage in computer hacking, aggravated identity theft, and cyberstalking often store evidence, fruits, and/or instrumentalities of their crimes at their residences.  This evidence can be in paper or electronic form.  Furthermore, individuals who use electronic devices and electronic modes of communication (including, but not limited to, e-mail) in furtherance of their illegal activities often keep these devices in private places, including at their residences and on their person.  As further described below, computers and other electronic storage media often contain files or remnants of files for months or even years.  For all of these reasons, I respectfully submit that evidence, fruits, and/or instrumentalities of the target offenses will be located at the **TARGET PREMISES**.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

177.     As described above and in Attachment B-1, this application seeks permission to search for items that might be found at the **TARGET PREMISES** and/or on the persons of **JASON LEIDEL** and **SARAH SORG**, in whatever form they are found.  One form in which they might be found is data stored on a computer's hard drive or other storage media.  Thus, the warrant applied for would authorize the seizure of electronic media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

178.     *Probable cause*.  I submit that, if a computer or storage medium is found at the **TARGET PREMISES** and/or on the persons of **JASON LEIDEL** and **SARAH**

**SORG**, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

      a.     Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months of years later using forensic tools. This is true because, when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

      b.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

      c.     Wholly apart from user-generated files, computer storage media— in particular, a computer's internal hard drive—contains electronic evidence of how the computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating systems configurations, artifacts from operation system or application operation; file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.      Similarly, files that have been viewed via the internet are

sometimes automatically downloaded into a temporary Internet directory or "cache."

179.    *Forensic evidence*.  As further described in Attachment B-1, this

application seeks permission to locate not only computer files that might serve as direct

evidence of the crimes described on the warrant, but also for forensic electronic evidence

that establishes how computers were used, the purpose of their use, who used them, and

when.  There is probable cause to believe that this forensic electronic evidence will be on

any storage medium at the **TARGET PREMISES** and/or on the persons of **JASON**

**LEIDEL** and **SARAH SORG** because:

a.      Data on the storage medium can provide evidence of a file that was

once on the storage medium but has since been deleted or edited, or of a deleted portion

of a file (such as a paragraph that has been deleted from a word processing file).  Virtual

memory paging systems can leave traces of information on the storage medium that show

what tasks and processes were recently active.  Web browsers, e-mail programs, and chat

programs store configuration information on the storage medium that can reveal

information such as online nicknames and passwords.  Operating systems can record

additional information, such as the attachment of peripherals, the attachment of USB

flash storage devices or other external storage media, and the times the computer was in

use.  Computer file systems can record information about the dates files were created and

the sequence in which they were created, although this information can later be falsified.

b.      As explained herein, information stored within a computer and

other electronic storage media may provide crucial evidence of the "who, what, why,

when, where, and how" of the criminal conduct under investigation, thus enabling the

United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within a computer or storage media (e.g. registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner.  Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used.  For example, as described herein, computers typically contain information that logs: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer and the IP addresses through which the computer accessed networks and the internet.  Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a computer may both show a particular location and have geolocation information incorporated into the file data.  Such file data typically also contains information indicating when the file or image was created.  The existence of such image files, along with external device connection logs, may also indicate the

presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera).  The geographic and timeline information described herein may either inculpate or exculpate the computer user, too.  Lastly, information stored within a computer may provide relevant insight into the computer user's state of mine as it relates to the offense under investigation.  For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

   c. A person with appropriate familiarity with how a computer works can, after examining the forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application if knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a

particular thing is not present on a storage medium.  For example, the presence or

absence of counter-forensic programs or anti-virus programs (and associated data) may

be relevant to establishing the user's intent.

       f.     I know that when an individual uses a computer to obtain

unauthorized access to a victim computer over the internet, the individual's computer will

generally serve as both an instrumentality for committing the crime, and also as a storage

medium for evidence of the crime.  The computer is an instrumentality of the crime

because it is used as a means of committing the criminal offense.  The computer is also

likely to be a storage medium for evidence of crime.  From my training and experience, I

believe that a computer used to commit a crime of this type may contain: data that is

evidence of how the computer was used; data that was sent or received; notes as to how

the criminal conduct was achieved; records of internet discussions about the crime; and

other records that indicate the nature of the offense.

       180.   *Necessity of seizing or copying entire computers or storage media*.  In

most cases, a thorough search of a premise for information that might be stored on

storage media often requires the seizure of the physical storage media and later off-site

review consistent with the warrant.  In lieu of removing storage media from the premises,

it is sometimes possible to make an image copy of storage media.  Generally speaking,

imaging is the taking of a complete electronic picture of the computer's data, including

all hidden sectors and deleted files.  Either seizure or imaging is often necessary to ensure

the accuracy and completeness of data recorded on the storage media, and to prevent the

loss of the data either from accidental or intentional destruction.  This is true because of

the following:

a.      The time required for examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable.  As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence.  Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on site.

b.      Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data at the **TARGET PREMISES**. However, taking the storage media off site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c.      Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

181.    *Nature of examination*.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise

copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including, but not limited to, computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

182.    **JASON LEIDEL** and **SARAH SORG** are known to utilize the **TARGET PREMISES** as a residence. It is possible that the **TARGET PREMISES** will contain storage media that are not predominantly used, or perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that it is probable that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for here would permit the seizure and review of those items as well.

## CONCLUSION

183.    Based on the facts set forth above, I submit that there is probable cause to believe that **JASON LEIDEL** and **SARAH SORG** have committed violations of 18 U.S.C. §§ 371 (Conspiracy), 18 U.S.C. § 1028A(a)(1) (Aggravated Identity Theft); 18 U.S.C. § 1030(a)(2)(C) (Fraud in Relation to Protected Computer); and 18 U.S.C. § 2261A(2)(B) (Cyberstalking), and that evidence, fruits, and/or instrumentalities of these offenses will be found at the **TARGET PREMISES**, including, but not limited to, computers, computer-related equipment, and internet-enabled devices that will be searched for the items in Attachments B-1, B-2a and B-2B. Therefore, I respectfully request issuance of the above-described criminal complaint, arrest warrants, and warrants to search

the **TARGET PREMISES**, and the persons of **JASON LEIDEL** and **SARAH SORG**,

for the items listed in Attachments B-1, B-2a and B-2b.

Respectfully submitted,

*Kevin Kuo*

Special Agent Kevin Kuo
Federal Bureau of Investigation


Affidavit submitted by email and attested to me as true and accurate by telephone consistent
with Fed. R. Crim. P. 4.1 and 41(d)(3) this    17th day of October, 2022.


_____
Honorable J. Mark Coulson
United States Magistrate Judge