MEMORANDUM

FROM: Mr. Michael C. Swenson
TO: The United States District Court for the District of Maryland
DATE: January 26, 2026

SUBJECT: VICTIM IMPACT STATEMENT

I respectfully submit this victim impact statement for the Court's consideration at sentencing following the jury conviction of Mr. Jason Michael Leidel for cyberstalking Erica Swenson and me.

Mr. Leidel stands before this Court after a jury of his peers found him guilty, beyond a reasonable doubt, of cyberstalking. That verdict confirms that what our family endured was not a misunderstanding, not a private dispute, and not mutual conflict. It was malicious criminal conduct.

I offer this statement to address three matters relevant to sentencing: (1) the sustained course of conduct Mr. Leidel engaged in; (2) the immediate and lifelong impact of that conduct on our children; and (3) the demonstrated risk that this conduct will continue absent meaningful accountability.

As for the first, Mr. Leidel's actions were not isolated or impulsive. They constituted a deliberate, years-long pattern of behavior. That pattern included false allegations of child abuse, sexual abuse, domestic violence, and professional misconduct. These accusations were directed to law enforcement, child protective services, multiple military commands, inspectors general, schools, employers, attorneys, and courts. Most of these accusations were anonymous. None were substantiated. Each, however, triggered investigations, interviews, and fear. Careers were placed at risk, reputations were attacked, and our family was repeatedly destabilized. This was not merely harassment. It was cyberstalking and coercive control, now confirmed by a unanimous jury verdict. To reflect on the duration of this conduct—that I have endured for more than eight years, and that Erica has endured it for even longer—underscores how extraordinary, exhausting, and destabilizing this experience has been for our family.

Second, the impact to our children—Erica's daughters, ███████ and █████████, and my sons, █████ and ████████—were repeatedly pulled into adult conflict they did not create and could not escape.

He subjected ███████ and █████████ to repeated law-enforcement and child-protective interventions because of false allegations. They were interviewed by police, child protective services, and child advocacy professionals, including forensic interviews, despite no abuse ever occurring.

They were repeatedly removed from school early, displaced from normal routines, and drawn into custody-related investigations. At one point, they missed the start of a school year entirely due to an emergency custody motion involving Mr. Leidel's false allegations of child abuse. They witnessed Mr. Liedel's hostility and attempts at intimidation during custody exchanges and public events, and exposed them to adult accusations and disparaging remarks that no child should ever hear.

Separately, Mr.Leidel specifically named ███████ in false abuse allegations shortly after I first met her—allegations serious enough to trigger additional investigations. And he disrupted her gymnastics activities with confrontations and intimidation at events that should have been safe, positive moments in her childhood.

███ received phone calls and voicemails from offices of United States Senators responding to fabricated reports that his father was a violent Marine officer. His personal phone number was used without consent in those reports, forcing us to change his number to stop further contact. He was placed in the impossible position of trying to understand why elected officials' offices were suddenly calling him about his parent.

██████ was named in false allegations claiming he had been injured by me—allegations serious enough to prompt investigative scrutiny. ███████ was included in CPS and NCIS investigations triggered by anonymous reports, despite no findings of abuse. He witnessed law-enforcement involvement in our family life and experienced repeated disruptions to normal routines because of protective actions we were forced to take.

All four of our children were subjected to repeated CPS interviews, exposure to law enforcement involvement, removal from school or activities to avoid confrontations, and displacement from their home due to emergency filings making false claims. They witnessed parental distress caused by ongoing harassment and lost the predictability and sense of safety that children depend on. They witnessed Erica being taken into custody because of false allegations—an event that was profoundly frightening and destabilizing for them. All four of our children have had to endure the lingering trauma of that experience: the fear of sudden separation, the confusion of seeing a parent accused of things that never happened, and the lasting anxiety that such a moment leaves behind. These experiences eroded their trust in adults, institutions, and authority figures—harm that does not end when this case concludes.

Last, I do not believe Mr. Leidel will stop without meaningful accountability. That belief is based on experience, not speculation. Protective orders, investigations, and court dismissals did not stop his conduct. When

confronted, Mr. Leidel adapted rather than disengage. He escalated his behavior by shifting tactics—moving from one forum, agency, or method to another—and intentionally made matters more complex and disruptive in an apparent effort to exhaust us, destabilize our family, and force continued engagement. Rather than respecting boundaries imposed by courts or authorities, Mr. Leidel repeatedly sought new ways to insert himself into our lives, prolonging fear and uncertainty and demonstrating a persistent disregard for the harm his actions were causing.

Since Mr. Leidel was incarcerated, our family finally began to experience something that had been absent for years: stability. Our children have been able to sleep without fear, attend school without disruption, and grow together in a home that is calm, predictable, and safe. We have been able to foster the sense of security they need to heal, to trust, and to simply be children and becoming young adults. That stability did not come from changes in our behavior. We have always acted responsibly and lawfully. It came only when Mr. Leidel's ability to interfere, harass, and destabilize our family was removed. We respectfully ask the Court to consider the importance of allowing our family to continue building that stability and sense of security for our children without the fear that Mr. Leidel's actions will once again intrude into their lives and undo the progress our family has made together.

Accountability in this case is not only about punishment. It is about protection.

Respectfully submitted,


Michael C. Swenson