FILED
WILKES BARRE
DEC 04 2023
PER _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCHES OF: | |
| 907 RIDGE AVENUE, SCRANTON, PENNSYLVANIA 18510 | Misc. No. 3:23MC 956 |
| TOYOTA PRIUS VIN# JTDKB20U097872104 | Misc. No. _____ <br> **UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF
## APPLICATIONS FOR SEARCH WARRANTS

I, Amos Tang, being duly sworn, hereby depose and state as follows:

1.    I am a Special Agent for the Federal Bureau of Investigation ("FBI"), United States Department of Justice ("DOJ"), and am currently assigned to the Baltimore Field Division. I am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code ("U.S.C."), § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516(1).

2.    I am a duly sworn member of the FBI and have been so employed since 2017. I am presently assigned to investigate violations of federal law including those concerning fraud and related activity in

connection with computers. I have participated in the execution of federal search warrants on physical properties, vehicles, and digital media and have seized and transported digital evidence, in accordance with FBI procedures.

3. I have received training and have gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, and the execution of searches and seizures. I have also received training on computer evidence identification, computer forensics, electronic device evidence seizure and processing, and various other criminal laws and procedures.

4. The information contained in this affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals. All conversations and statements described in this affidavit are related in substance and in part unless otherwise indicated. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant and in support of a motion to revoke pretrial release, I have not included every detail of every aspect of the investigation. I have not excluded any information known to me that

would defeat a determination of probable cause. Rather, I have set forth only those facts that I believe are necessary to establish probable cause to believe that JASON MICHAEL LEIDEL ("LEIDEL") is engaged in the following federal criminal offenses: (a) 18 U.S.C. § 1510, Obstruction of criminal investigation; (b) 18 U.S.C. § 1512, Tampering with a witness, victim, or informant, and; (c) 18 U.S.C. §1521, Retaliation against a Federal law enforcement officer by false claim or slander of title (the "TARGET OFFENSES"). In addition, I further believe there is clear and convincing evidence LEIDEL violated his pretrial release conditions, and in accordance with 18 U.S.C. § 3142, LEIDEL is subject to penalties delineated in 18 U.S.C §3148. Furthermore, it is anticipated that the execution of search warrants will reveal evidence that the items identified in Attachment "B" will be found within the target premises listed in Attachments "A-1" and "A-2" and that said items constitute property which is evidence of the commission of a criminal offense; or contraband, the fruits of crime, or things otherwise criminally possessed; or property designed or intended for use or which has been used as the means of committing a criminal offense.

3

5. Based on my knowledge, training, and experience and the facts set forth in this affidavit, I submit there is probable cause to believe that LEIDEL – either independently or through the assistance and permission of his third-party custodians – H.L. and C.L., committed the TARGET OFFENSES, and that these same individuals individually or collectively used mobile communication devices during the commission of the TARGET OFFENSES, and therefore probable cause exists to believe that the TARGET PREMISES described in Attachments A-1 and A-2 contain evidence, instrumentalities, contraband, or fruits of these crimes as further described in Attachments B incorporated by reference.

6. I submit the affidavit in support of applications by the United States of America for a warrant to search the following:

a. The premises located at 907 Ridge Avenue in Scranton, Pennsylvania – utilized by LEIDEL; and

b. a vehicle, 2009 Toyota Prius, red colored, bearing Maryland registration 8DN7886, VIN# JTDKB20U097872104, registered to LEIDEL.

(collectively referred to as the TARGET PREMISES, more fully described in Attachments A-1 and A-2 and incorporated by reference).

4

The TARGET PREMISES are to be searched for evidence, fruits and/or instrumentalities of the TARGET OFFENSES, as described in Attachment B.

## CASE BACKGROUND

7.    The United States has been investigating LEIDEL, an active-duty, commissioned officer of the United States Navy, for violations of, *inter alia*, unauthorized access to a computer account, in violation of 18 U.S.C. § 1030; stalking, in violation of 18 U.S.C. § 2261A; aggravated identity theft, in violation of 18 U.S.C. § 1028A; and, wire fraud, in violation of 18 U.S.C. § 1343.  The investigation relates to LEIDEL's conduct in the context of a contentious divorce from his ex-wife ("E.S."), and includes his intrusion into accounts of E.S., use of spoofed email accounts for fraudulent purposes, submission of forged documents in court proceedings, and submission of misleading information in court proceedings.

8.    On October 20, 2022, LEIDEL and SARAH SORG, his then partner, were arrested pursuant to arrest warrants issued in the United States District Court in the District of Maryland., in conjunction with a

criminal complaint also lodged in that District. An eighty-plus page Affidavit was submitted in support of the Criminal Complaint.

9.     During LEIDEL's arrest, a mobile device was observed in plain view through the window of LEDIEL's vehicle, the red colored Toyota Prius registered to LEIDEL. This device and the vehicle were later released to LEIDEL's third-party custodians. Apple records indicate an Apple iPhone SE was registered to LEIDEL on November 13, 2022, which occurred[1] after his arrest.

10.     LEIDEL was indicted on November 3, 2022 by a federal grand jury in the District of Maryland for stalking, in violation of 18 U.S.C. § 2261, *United States v. Jason Leidel,* 22-cr-0380-LKG.

11.     E.S. is a victim of LEIDEL's criminal conduct, and a potential witness for the Government in the event of a trial against LEIDEL.

12.     LEIDEL was initially detained pending trial. On January 9, 2023, LEIDEL was released to third-party custodians, H.L. and C.L. The conditions of his release included the following:

---

[1] Apple records show this device to be an Apple iPhone SE, Serial No. MLQ4F6G5WJ, IMEI: 254109336295986. While the identification of this specific device is relevant, this affidavit requests a search warrant of the TARGET RESIDENCE and TARGET VEHICLE for any and all devices believed to be associated with LEIDEL's unlawful conduct.

a. No use of computer systems, internet capable devices and/or similar electronic devices at any location. The defendant shall cooperate with the U.S. Probation and Pretrial Services Office monitoring of compliance with this condition.

b. Third party custodians must swear in a notarized affidavit that they removed all internet capable devices, and will not facilitate any new devices, that they will keep their cellphones on their person at all times, password protect their cellphones, and restrict the defendant from using their cellphones.

13. The facts and circumstances of this investigation as set forth below show that there is probable cause to believe that following his release, LEIDEL attempted to tamper with the investigation, to include attempted contact with co-defendant SARAH SORG, and the renewal of LEIDEL's campaign to harass others tied to the prosecution of the case, to include E.S., FBI Special Agent Kevin Kuo, and Assistant United States Attorney Michael Cunningham.

14. LEIDEL's conduct violates the conditions of his pretrial release and constitutes Obstruction of a Criminal Investigation, in violation of 18 U.S.C. § 1510, Tampering with a Witness, Victim or Informant, in violation of 18 U.S.C. § 1512, and/or Retaliation Against a Federal Law Enforcement Officer by False Claim or Slander, in violation of 18 U.S.C. §1521.

7

15. Based on my knowledge, training, and experience and the facts set forth in this affidavit, I submit there is probable cause to believe that LEIDEL, either independently or with the assistance of his third party custodians, committed the TARGET OFFENSES, and that these same individuals have used the mobile communication devices during the commission of the TARGET OFFENSES, and therefore probable cause exists to believe that the TARGET PREMISES described in Attachments A-1 and A-2 contain evidence, instrumentalities, contraband, or fruits of these crimes as further described in Attachment B.

16. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## INCIDENTS INDICATIVE OF TARGET OFFENSES:

17. As previously stated, LEIDEL was released from pretrial detention to that of third-party custodians. All reside in a single-family residence at 907 Ridge Avenue in Scranton, Pennsylvania. Following LEIDEL's release, multiple incidents occurred that indicate criminal

activity, specifically, the TARGET OFFENSES, that warranted further investigation by the FBI.

18.   **Incident One: eFOIPA Authorization Request.**  On January 17, 2023, at approximately 11:02 PM EST, E.S. notified the FBI that she had received a suspicious email to her email account, lagertha.freya.fox@gmail.com. The email was from efoia@subscriptions.fbi.gov, and included the following message (displayed below):

> From: <efoia@subscriptions.fbi.gov>
> Date: Tue, Jan 17, 2023 at 11:02 PM
> Subject: eFOIPA Authorization Request
> To: <lagertha.freya.fox@gmail.com>
>
> You have successfully requested access to FBI's eFOIPA website.
> Please access the efoia.fbi.gov by following this temporary authorization url:
> https://efoia.fbi.gov/authorize/6b9e8911fae29635973972e4c2a867e2d1b63e02

19.   The email also contained a verification link. E.S. did not select or click the verification link and advised the FBI that she did not submit an eFOIPA[2] request.

---

[2] The FBI's website provides an online portal system, efoia.fbi.gov/#home, designed to allow requesters to submit and receive responses to Freedom of Information Act and Privacy Act (FOIPA) requests electronically (eFOIPA). The portal provides the option to submit both standard or electronic requests.

20.    The FBI's Information Management Division ("IMD") confirmed that the eFOIPA Authorization Request was authentic – that a request was submitted with E.S.'s email address as the requestor's email address.

21.    On February 2, 2023, FBI IMD provided investigators with the following additional information pertaining to the above-captioned eFOIPA request:

-    The submitter's IP was: **138.199.50.101**[3]

-    The most prevalent User Agent[4] string was: **Mozilla/5.0 (iPhone; CPU iPhone OS 16_1_2 like Mac OS X) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/16.1 Mobile/15E148 DuckDuckGo/7 Safari/605.1.15**

---

[3] IP address 138.199.50.101 resolves to "Datacamp Limited. Open-source research indicates Datacamp Limited is a content delivery network that provides high-bandwidth dedicated servers. Based on my training, knowledge, and experience, IP obfuscation services such as Proton VPN and other virtual private network (VPN) services utilize Datacamp Ltd infrastructure. VPNs have both legitimate and nefarious applications, and are therefore commonly used by cyber actors to avoid detection by law enforcement.

[4] The User-Agent (UA) string identifies devices requesting online content. The User-Agent tells the server what the visiting device is (among many other things) and contains information about the requesting device, which is then used to determine what content to return. This is more fully explained beginning in Paragraph 47.

22.    **Incident Two: FBI NTOC Submission.**  On January 31, 2023, the FBI National Threat Operations Center (NTOC) notified FBI special agents of a complaint with allegations of misconduct by FBI Special Agent (SA) Kevin Kuo and Assistant United States Attorney (AUSA) Michael Cunningham.  SA Kuo was the affiant for the federal complaint that resulted in LEIDEL's arrest.  AUSA Cunningham is the lead prosecutor assigned to the case.  The purported submitter of the complaint was P.I.  P.I. is the *guardian ad litem* for LEIDEL's and E.S.'s children in the ongoing family-law relations litigation between E.S. and LEIDEL.

23.    The FBI showed P.I. the NTOC complaint.  P.I. confirmed that his contact information as reflected in the complaint was accurate.  However, P.I. denied submitting the complaint, disagreed with the substance of the complaint, and indicated that he did not ask anyone to file the complaint on his behalf.  The NTOC complaint is captioned in the email to the FBI agents assigned to this case, and displayed below:

**From:** NTOC_SSA@fbi.gov <NTOC_SSA@fbi.gov>
Sent: Tuesday, January 31, 2023 2:11 AM
To: Tang, Amos (BA) (FBI) <attang@fbi.gov>; Kuo, Kevin (CyD) (FBI) <kkuo@fbi.gov>
Cc: NTOC_SSA <NTOC_SSA@fbi.gov>; Pavelites, Charles (CJISD) (FBI) <cpavelites@fbi.gov>

Subject: [EXTERNAL EMAIL] - Information Involving Main Sentinel Case XXXX-BA-3417105

Supervisory Special Agent Kuo and Special Agent Tang,
I am a Threat Intake Examiner (TIE) at the FBI National Threat Operations Center (NTOC) Unit where we receive information from the public regarding criminal activity and threats to national security. The following information is being forwarded for your situational awareness and any action deemed appropriate.

On 01/31/2023, at 12:03 a.m. Eastern Time, Peter Imbrogno, business telephone number 757-493-8200, email address imbrogno@imbrognolaw.com, business address 4099 Foxwoods drive suite 106, Virginia Beach, VA 23462, Internet Protocol (IP) address **138.199.50.101**, which resolves to Miami, Florida 33101, submitted an online tip to the FBI National Threat Operations Center (NTOC) via tips.fbi.gov, to **report public corruption and retaliation by AUSA Michael Cunningham or Baltimore and FBI personnel Kevin Kuo against Imbrogno's client, Jason Leidel, to which there is an open investigation.**

Date Submitted: 01/31/2023 12:03:24 AM EST
Date Closed: 01/31/2023 12:53:04 AM EST
Transaction Number: e6my6z7r
Violation: **Public-Corruption**
Emergency: False
Threat To Life: False

Submitted Text:
AUSA Michael Cunningham of Baltimore and Kevin Kuo have been keeping me in constant contact about an ongoing investigation regarding the parents of two of my clients.  In doing so it appears that they may have violated DOJ FM 1-7000.
**A motion in limine was filed around 4 pm on a Friday in October and the following Monday Cunningham and Kuo filed a search and arrest warrant against the parent that filed the motion in limine.  I don't practice Federal law but here in Virginia, this retaliation would be an ethics violation.  The criminal complaint**

contains so many overt lies that the ACLU will have a field day. The other parent is the government's case in chief and she (Erica Leidel) cannot remember her own lies. An internet search of the law enforcement officers involved demonstrates civil rights abuses and abuse of process. Ms Leidel admitted to fabricating a Walmart receipt and sending it to the 2 LE in different states, which would make her alleged actions violable of Federal law.

Violation Questions
What was the exact crime that occurred?: **Violation of DOJ FM 1-7000 and retaliation**

Does this information involve a government official? If so, what is their name and position/title?: **AUSA Michael Cunningham and FBI agent Kevin Kuo**

Do you have any evidence to support your claim or know of any witnesses to the crime(s)?: **Yes**

Did you suffer any personal losses (financially or physically) due to the crime?: Not yet

How long has this activity been going on?: Between 1 and two years

Subject Information
First Name: Michael
Middle Name:
Last Name: Cunningham
DOB:
Age: 60
Phone Type: Business
International: False
Phone Number: 4102094884
Phone Ext:
Type: Business
Address: 36 S. Charles street suite 400
City: Baltimore

State: MD
Zip: 21201
Additional Info: I have probably a thousand pages of discovery that will document your investigation.
**The Virginia Beach police department had gotten in trouble for their department wide policy of fabricating evidence (rouse) to coerce suspects into confessing to crimes.** I heard but never saw any evidence that the crimes that the va Beach police department charged Lt Leidel with were nolle prosequi because of the alleged rouses against him.
How is Contact Known: He and I have talked several times on the phone. I am not afraid of using strategic communication to proffer embellishments to benefit my clients but Mr. Cunningham and Agent Kevin Kuo have used such temerity that I am concerned that they may have crossed the line of a military war veteran (Jason Leidel).
**I have used the strength of my office to make Lieutenant Leidel's life difficult.**
Witness Information
First Name: Jason
Middle Name:
Last Name: Leidel
DOB:
Age: 45
Phone Type: Cell
International: False
Phone Number: 2529172915
Phone Ext:
Type: Residential
Address: 2893 schoolhouse circles
City: Silver springs
State: MD
Zip: 20902
Additional Info: NA
How is Contact Known: He is the father of two of my clients.
Complainant Information
**First Name: Peter**
**Middle Name:**

Last Name: Imbrogno
DOB:
Phone Type: Business
International: False
Phone Number: 7574938200
Phone Ext:
Email: imbrogno@imbrognolaw.com
Type: Business
Address: 4099 Foxwoods drive suite 106
City: Va beach
State: VA
Zip: 23462
Additional Info:
Submitter IP Address: 138.199.50.101
Remote Host: api.fbi.gov
Http Referrer: https://tips.fbi.gov/
User Agent: Mozilla/5.0 (iPhone; CPU iPhone OS 16_1_2 like Mac
OS X) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/16.1
Mobile/15E148 DuckDuckGo/7 Safari/605.1.15
Latitude: 25.77427
Longitude: -80.19366
Country: US
Region: Florida
City: Miami
Postal Code: 33101
Timezone: -05:00
Please advise an NTOC SSA if you need further assistance
concerning this matter via telephone at 304-625-0990 or via email
at NTOC_SSA@fbi.gov.  A Guardian containing this information
can be drafted by the FBI NTOC upon request of the Baltimore
Division.
Sincerely,
NTOC

24.    The FBI reviewed the raw data and determined that, identical to Incident One, the submitter's IP address was **138.199.50.101**; also identical to Incident One, the User Agent string was: **Mozilla/5.0 (iPhone; CPU iPhone OS 16_1_2 like Mac OS X) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/16.1 Mobile/15E148 DuckDuckGo/7 Safari/605.1.15.**

25.    Investigators determined the submission IP addresses and the User Agent strings from both Incident One and Incident Two were identical. Investigators believed the parity in the submission method of these fraudulent communications were indicative of the same submitter, who used the same IP address, and utilized the same electronic communication device (based on the User Agent string).    Other circumstantial evidence indicative of criminal activity included the close sequence of events between the two incidents (January 17th and January 31st), as well as the subject matter and parties referenced in the communications, which were specific to this case.

26.    **Incident Three: Spoofed Communication from E. S.'s Email Account to Sarah Sorg.**  On or about February 22, 2023, Andrew White, Esquire, counsel for Sarah Sorg, notified AUSA Cunningham that SORG had received an email to her account, sarahesorg@yahoo.com,

purportedly from erica.leidel@navy.mil.  The email was provided to

AUSA Cunningham.  The email was dated February 15, 2023 at 1:00:05

PM EST, and read:



27.    E.S. advised the FBI agents she did not send this email to

Sorg.  The FBI reviewed the full email header and determined the email

was spoofed, in other words not sent by the purported sender.  The

relevant text portion of the header is shown below, with bolded portions

for emphasis:

Received: from 127.0.0.1
 by atlas-production.v2-mail-prod1-gq1.omega.yahoo.com pod-id atlas--production-gq1-557497bd78-jt75c.gq1.yahoo.com with HTTP; Wed, 15 Feb 2023 18:00:03 +0000
**Return-Path: <Erica.leidel@navy.mil>**
**X-Originating-Ip: [89.187.129.24]**
Received-SPF: softfail (**domain of transitioningnavy.mil does not designate 89.187.129.24 as permitted sender**)
Authentication-Results: atlas-production.v2-mail-prod1-gq1.omega.yahoo.com;
 dkim=unknown;
 spf=softfail smtp.mailfrom=navy.mil;
 dmarc=fail(p=NONE,sp=NONE) header.from=navy.mil;
X-Apparently-To: **sarahesorg@yahoo.com**; Wed, 15 Feb 2023 18:00:03 +0000

28.    The email header displayed the following information: "softfail (domain of transitioningnavy.mil does not designate 89.187.129.24 as a permitted sender)." "Softfail" is the status result of an email when a sender's IP address is not permitted to send emails using the domain. In this case the domain was "navy.mil." The IP address was not designated a permitted sender, in other words, the email originating from said IP was not from the U.S. Navy's email domain. The FBI determined the IP address 89.187.129.24, identified as "EHLO emkei.cz," is an abbreviation for Emkei's Fake Emailer of Czechia, an email spoofing service previously used by LEIDEL on multiple occasions prior to his arrest.

29.    The Naval Criminal Investigative Service confirmed that this email did not originate from any one of E.S.'s Department of Defense

email accounts. NCIS's analysis of the email header was consistent with the FBI's analysis.

30. As explained in detail in the above-referenced Affidavit in support of the Criminal Complaint, LEIDEL used Emkei's fake emailer on multiple occasions between December 1, 2020 and February 16, 2021, to harass E.S. and other victims, including a local law enforcement officer.

31. **Incident Four: Suspicious Text Message Received by Sarah Sorg.** On February 22, 2023, at 7:57 PM EST, Sarah Sorg received a text from the phone number 1-484-495-4136. The content of the text message was as follows:



32.    Law enforcement database checks of the phone number +1 (484) 495-4136 showed that it was registered with Inteliquent, Inc.. One of the services offered by Inteliquent, Inc. is a Voice Over Internet Protocol (VOIP) text messaging service, a technology that allowed for calls and messages to be sent using broadband Internet instead of a phone line.

33.    As also stated in the above-referenced Affidavit in support of the Criminal Complaint, LEIDEL used VOIP service in the crimes for which he was charged by complaint and indictment.

---

[5] "Brian" may be a reference to Brian Muth, SORG's ex-husband and father of her children. SORG contacted Muth, and he did not recognize the number ending in "4136."

34.    **Incident Five: Spoofed Email from E.S.'s Email Account to AUSA Michael Cunningham.**    On March 24, 2023, at 12:29 PM EST, AUSA Cunningham and FBI SA Kuo[6] received an email purportedly from lagertha.freya.fox@gmail.com, which was an account that belonged to E.S. The content of the email message was as follows:

---

——Original Message——
From: Lagertha.freya.fox@gmail.com <Lagertha.freya.fox@gmail.com>
Sent: Friday, March 24, 2023 12:29 PM
To: Kevin.kuo@fbi.gov; Sullivan, Thomas (USAMD) <TSullivan@usa.doj.gov>; Cunningham, Michael (USAMD) <mcunningham@usa.doj.gov>
Subject: [EXTERNAL]

IP address: 108.39.96.47
X-Priority: 3 (Normal)
Importance: Normal
X-Mailer: Microsoft Windows Live Mail
Return-Path: Lagertha.freya.fox@gmail.com
Errors-To: Lagertha.freya.fox@gmail.com
Reply-To: Lagertha.freya.fox@gmail.com
Content-Type: text/plain; charset=windows-1258

Sirs

Thank you for your help with my custody and visitation case. If all y'all hadn't personally intervened and forgiven me for all of the times that I was not honest with you I'd hate to imagine what would become of my children. Sense my lies prevent you from calling me as a witness will you please keep this case open until January 2024? If you are still interested in filing criminal charges against me please let me know and I will send you all of the evidence that I have on others.

Erica Marie Swenson
757 335 2598

---

35.    The FBI reviewed the full email header and determined the email to be fraudulent for the same reasons as **Suspicious Incident 3,**

---

[6] SA Kuo did not receive the email, because the FBI's email system filters out potential spoofed emails. AUSA Thomas Sullivan, another recipient of the email, was assigned to the case until he was sent on temporary detail in February 2023.

specifically the originating I.P. address. Similar to Incident 3, this email's originating IP: 89.187.129.29 was associated with Emkei's Fake Emailer.

36. E.S. was also interviewed and denied sending the email. Moreover, she denied the accuracy of the content of the email.

37. The above-referenced suspicious activity resulted in interference with the current investigation of this case and prompted the FBI to further investigate. Specifically, the events above are indicative of a cyber criminal's intent to:

- Obstruct the current criminal investigation;

- Tamper or retaliate with a witness and victim; and

- retaliate against the federal prosecutor and federal agents by false claim or slander of title.

## PROBABLE CAUSE

38. On April 4, 2023, the FBI obtained court orders for multiple account identifiers known to belong to LEIDEL and his third-party custodians, H.L. and C.L. The court orders were served on various service providers, to include Apple, Pinger/Text Now, and T-Mobile.

### Apple Records: Incidents 1, 2, and 4

39.   Apple records revealed iPhone applications consistent with the aforementioned suspicious incidents were downloaded to a device registered to H.L. Specifically, to an Apple iPhone registered to the iCloud account mercy7east@aol.com.

40.   H.L. is the listed subscriber of mercy7east@aol.com. An Apple iPhone 13 Midnight, IMEI 351475531967403 was registered to mercy7east@aol.com on November 13, 2021.

41.   "Create_ts" is a category of Apple record data defined as the date and time a transaction was initiated for a particular user, account, and device.   The FBI reviewed these records and determined the following applications and the corresponding dates the applications were downloaded were as follows:

| Application | Downloaded Date |
|---|---|
| DuckDuckGo Private Browser | January 15, 2023 |
| Mobile Jump Pte VPN Super Unlimited Proxy | January 16, 2023 |
| All Connected Co. Ltd VP Proxy Master Super VPN | January 17, 2023 |
| Mobile Jump Pte VPN Unlimited Best VPN Proxy | January 18, 2023 |
| Proton AG Proton VPN Fast and Secure | January 30, 2023 |
| Pinger Calling + Phone App | January 30, 2023 |

42.   The dates and times that these applications were downloaded all occurred after LEIDEL's release from detention on January 9, 2023.

23

43. Apple records further reveal the account mercy7east@aol.com downloaded the search engine **DuckDuckGo** on January 15, 2023 to an **iPhone** with an operating system version **16.1.2**.

44. The details of these Apple records - the search engine (**DuckDuckGo**), software (**iPhone OS 16_1_2**), and Version (**16.1**) – are consistent with the User Agent strings associated to the suspicious activity of **Incident 1**, which occurred on January 17, 2023, and **Incident 2**, which occurred on January 31, 2023.

45. Furthermore, both the FBI eFOIPA Authorization Email received by E.S. and the fraudulent FBI NTOC complaint purportedly sent by P.I. (**Incidents 1** and **2** respectively), originated from the same Internet Protocol (IP) address: **138.199.50.101**. The IP address was registered to "Datacamp Ltd." Based on my training, knowledge, and experience, "Datacamp Ltd." is commonly associated with VPN services. The Apple records also show that the same account, mercy7east@aol.com, downloaded VPN applications prior to both incidents, and these records support the assessment that a VPN may have been utilized during both **Incident 1** and **Incident 2**.

### User-Agent (UA) Strings:
### Additional Technical Information Related to Incidents 1 and 2

46. Based on training, knowledge, and experience in investigating cyber-criminal activities, I know that Hypertext Transfer Protocol (HTTP) is an application-layer protocol for transmitting hypermedia documents, such as Hypertext Markup Language (HTML). HTTP was designed for communication between web browsers and web servers, but it can also be used for other purposes. HTML is a standardized system for tagging text files to achieve font, color, graphic, and hyperlink effects on internet pages.

47. The User-Agent (UA) string is contained in the HTTP headers and is intended to identify devices requesting online content. The User-Agent tells the server what the visiting device is (among many other things) and this information can be used to determine what content to return.

48. Both **Incident 1** and **Incident 2** had User Agent (UA) strings consistent with the Apple records for the iCloud account mercy7east@aol.com. The UA strings indicated the same iPhone operating system (OS) version and browser engine, which are highlighted in red for emphasis:

- **Incident 1:** Mozilla/5.0 (iPhone; CPU iPhone OS 16_1_2 like Mac OS X) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/16.1 Mobile/15E148 DuckDuckGo/7 Safari/605.1.15

- **Incident 2:** Mozilla/5.0 (iPhone; CPU iPhone OS 16_1_2 like Mac OS X) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/16.1 Mobile/15E148 DuckDuckGo/7 Safari/605.1.15

### T-Mobile and Pinger Records: Incident 4

49. Regarding evidence obtained from **Incident Four**, the number ending in "4136" sent two messages to Sarah Sorg's phone on February 22, 2023.

50. On April 6, 2023, pursuant to a Court Order, Pinger provided detailed message logs for the phone number "14844954136." On February 21, 2023, between 00:57:28 UTC and 00:57:28 UTC, this phone number sent two messages to Sarah Sorg's number "1-814-594-4114." The message logs and the date and time of the message activity is consistent with the disclosure by Andrew White, Esquire. A third message was sent from "4136" to "1-252-917-2915." The number ending in "2915" is known to the FBI to have been subscribed to by LEIDEL.

51.    On April 12, 2023, pursuant to a Court Order, T-Mobile provided subscriber information and phone records for the number 1-252-917-2915. The records confirmed LEIDEL remained the subscriber of the number ending in "2615" at the time a message was sent from the phone number ending in "4136." In addition to the records from Pinger, T-Mobile's records provide additional evidence that a text message was received from "4136" to LEIDEL's number ending in "2615."

52.    The records from Pinger and T-Mobile reveal LEIDEL attempted to contact Sarah Sorg using the Pinger texting application on February 22, 2023. This is corroborated by: 1) the suspicious text message received by Sorg; 2) Pinger detailed message logs; 3) T-Mobile phone records associated with LEIDEL; and 4) Apple records of an iPhone registered to mercy7east@aol.com that downloaded the Pinger Text Free: Private Texting App on January 30, 2023, and the Pinger Calling + Phone App on February 20, 2023.

53.    Based on my training and experience, I know that individuals who engage in computer hacking, aggravated identity theft, and cyberstalking often store evidence, fruits, and/or instrumentalities of their crimes at their residences, vehicles, and on their electronic devices.

27

This evidence can be in paper or electronic form. Furthermore, individuals who use electronic devices and electronic modes of communication (including, but not limited to, e-mail) in furtherance of their illegal activities often keep these devices in private places, including at their residences, their vehicles, and on their person. As further described below, computers and other electronic storage media often contain files or remnants of files for months or even years.

54. There is probable cause to believe that the electronic and computer devices located at the TARGET PREMISES belong to LEIDEL and/or third-party custodians H.L. and/or C.L. Furthermore, there is probable cause to believe that JASON LEIDEL – either independently or by proxy through his third-party custodians – has access and control of said electronic and computer devices used to commit the TARGET OFFENSES.

55. For all of these reasons, I respectfully submit that evidence, fruits, and/or instrumentalities of the TARGET OFFENSES will be located at the TARGET PREMISES.

28

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

56. Based on the aforementioned Apple records, the FBI has probable cause to believe LEIDEL utilized H.L.'s Apple iCloud account, mercy7east@aol.com. An Apple iPhone 13 Midnight, IMEI 351475531967403 was registered to mercy7east@aol.com on November 13, 2021.

57. Additionally, when LEIDEL was arrested on October 20, 2022, a mobile device observed through the window of LEDIEL's vehicle, the red colored Toyota Prius, was not seized by investigators. Apple records indicate an Apple iPhone SE was registered to JASON LEIDEL after his arrest, on November 13, 2022.

58. Based on my training, knowledge, and experience investigating crimes, such as the TARGET OFFENSES, I know that subjects who engage in cyber-criminal activities, specifically cyberstalking and other related offenses often utilize multiple electronic devices to commit these offenses and avoid detection by law enforcement.

59. This application seeks authorization to search for items described more fully in Attachment B that might be found in the TARGET PREMISES, in whatever form they are found. In my training

and experience, one form in which evidence might be found is data stored on a mobile electronic device's memory, computer's hard drive or other storage media. Thus, this warrant requested would authorize the seizure of electronic devices and media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

60. *Probable cause.* I submit that, if a computer or storage medium is found in the TARGET PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a.    Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months of years later using forensic tools. This is true because, when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.    Wholly apart from user-generated files, computer storage media—in particular, a computer's internal hard drive—

contains electronic evidence of how the computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating systems configurations, artifacts from operation system or application operation; file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.    Similarly, files that have been viewed via the internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

61.   *Forensic evidence.* As further described in Attachment B-1, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the TARGET PREMISES because:

a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the

times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b.     As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g. registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that logs: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into the file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of

32

additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user, too. Lastly, information stored within a computer may provide relevant insight into the computer user's state of mine as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.    A person with appropriate familiarity with how a computer works can, after examining the forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.    The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application if knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.    Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f.    I know that when an individual uses a computer to obtain unauthorized access to a victim computer over the internet, the individual's computer will generally serve as both an instrumentality

for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of internet discussions about the crime; and other records that indicate the nature of the offense.

62.    *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premise for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a.    The time required for examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable

time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on site.

b.   Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data in the vicinity of the TARGET PREMISES. However, taking the storage media off site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c.   Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

63.   *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including, but not limited to, computer-assisted scans of the entire

medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

64.   JASON MICHAEL LEIDEL utilized the TARGET RESIDENCE as his primary residence. It is possible that the TARGET PREMISES, to include the TARGET VEHICLES, may contain storage media not predominantly used, or owned, by persons not suspected of a crime. If it is nonetheless determined that evidence, fruits, and/or instrumentalities of the TARGET OFFENSES could be found on any such computers or storage media, the warrant applied for herein would also permit the seizure and review of said items.

## CONCLUSION

65.   Based on the facts set forth above, I submit that there is probable cause to believe that JASON MICHAEL LEIDEL committed violations of 18 U.S.C. § 1510, Obstruction of criminal investigation; 18 U.S.C. § 1512, Tampering with a witness, victim, or informant, and; 18 U.S.C. § 1521, Retaliation against a Federal law enforcement officer by false claim or slander of title (the "TARGET OFFENSES"), and that evidence, fruits, and/or instrumentalities of these offenses will be found

in the TARGET PREMISES, including, but not limited to, computers, computer-related equipment, and internet-enabled devices that will be searched for the items in Attachment B. I further submit that there is clear and convincing evidence that LEIDEL violated his supervised release and is subject to sanctions delineated in 18 U.S.C. § 3148. Therefore, I respectfully request issuance of the above-described warrant to search the TARGET PREMISES for the items listed in Attachment B.

Respectfully submitted,

*Amos Tang*

Special Agent Amos Tang
Federal Bureau of Investigation

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this ___4+3___ day of December, 2023.

*Joseph F. Saporito, Jr.*

Joseph F. Saporito, Jr.
United States Magistrate Judge